Filed 11/4/15 Unmodified document attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SUSAN DOOLITTLE,<br><br>    Plaintiff, Cross-defendant and Appellant,<br><br>v.<br><br>EXCHANGE BANK, as Trustee, etc.,<br><br>    Defendant, Cross-complainant and Respondent. | A143422<br><br>(Sonoma County<br>Super. Ct. No. SPR-86741)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

The opinion filed on October 20, 2015 is modified as follows:

1. On page 17, line 16, delete the words "such as the amendment in this case," so the sentence reads:

> And in determining capacity to execute a trust amendment that "in its content and complexity, closely resembles a will or codicil," the courts have held that the lower mental capacity standard for the making of a will should apply.

2. On page 17, line 19, immediately after the case citations that follow the sentence above, add as footnote 7 the following, which will require renumbering all subsequent footnotes:

> [7] The parties have not addressed and we express no opinion as to the proper standard to be applied on remand.

1

The petition for rehearing filed on behalf of Susan Doolittle is denied. The request for modification filed on behalf of Exchange Bank is denied. There is no change in the judgment.

Date: _____ Acting P.J.

Trial Court: The Superior Court of Sonoma County

Trial Judge: Honorable Michael Byrne

Counsel for plaintiff and appellant: HARTOG & BAER, P.C.
David W. Baer
John A. Hartog
Laura C. Roche

Counsel for defendant and respondent: ABBEY, WEITZENBERG, WARREN &
EMERY
Lewis R. Warren
Michael R. Wanser

REED SMITH LLP
Paul D. Fogel
Dennis Peter Maio

FRANCESCHINI FREITAS LLP
Richard Thomas Franceschini

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SUSAN DOOLITTLE,<br><br>        Plaintiff, Cross-defendant and<br>        Appellant,<br><br>v.<br><br>EXCHANGE BANK, as Trustee, etc.,<br><br>        Defendant, Cross-complainant and<br>        Respondent. | A143422<br><br>(Sonoma County<br>Super. Ct. No. SPR-86741) |

Susan Doolittle appeals from orders of the probate court authorizing Exchange Bank, the trustee for her mother's trust, to use trust assets to defend against two actions Susan has filed challenging the disposition of the trust estate under an amendment to the trust. Susan contends the provision of the amendment that authorizes these expenditures is, in effect, a no-contest clause that under current provisions of the Probate Code may not be enforced without a determination that her challenges lack merit and were brought without probable cause and, in all events, may not be enforced until the validity of the amendment containing the authorization has been adjudicated. We find no merit in these contentions and thus shall affirm the orders.

**Factual and Procedural History**

On November 5, 1999, Constance Doolittle (Connie) established an inter vivos trust. Connie was both the trustor and the initial trustee of the trust and she retained the right to amend and revoke it during her lifetime. Connie named various persons as beneficiaries of gifts from the trust estate and designated her two daughters, Susan and Carolyn, as remainder beneficiaries of her approximately $8.5 million estate.

1

On June 28, 2000, Connie amended the trust by executing the "First Amendment to the Constance Doolittle Trust UTD November 5, 1999." The amendment, among other things, included two $500,000 gifts, one to a friend and the other to a caregiver.

In 2004, Connie hired Juan Amador as her gardener. A few months later, on September 15, 2004, Connie amended and restated her trust in its entirety by executing the "First Amended and Restated Trust Agreement of the Constance Doolittle Trust UTD November 5, 1999." Among other changes, the revised trust included a large gift of real property to Juan, and added six additional residual beneficiaries, including Juan and five other friends and caregivers.

Beginning in 2004, Connie began paying attorney fees out of trust funds to defend against what she perceived as attacks by Susan and Carolyn on the validity of her designated gifts to Juan. The record does not reveal the details of these attacks or of the steps taken for which the attorney fees were paid.

On January 26, 2005, Connie amended and restated the trust in what would be its final form, by executing the "Second Amended and Restated Trust Agreement of the Constance Doolittle Trust UTD November 5, 1999" (hereafter 2005 trust). In the 2005 trust, Connie made gifts upon her death to various beneficiaries, including $500,000 to Susan, $500,000 to Carolyn, and $150,000 to each of her grandchildren. She named seven persons, not including Susan or Carolyn, as remainder beneficiaries, giving one-fourth of the remainder to Juan and one-eighth of the remainder to each of six beneficiaries who were Connie's friends and caregivers.

In the 2005 trust instrument Connie declared that various powers belonged to her as trustee and to any successor trustee, including the power to "litigate" and "employ" and "reasonably compensate . . . attorneys." Connie designated Exchange Bank (trustee) as her successor trustee. Under the heading "No Contest Provisions," the trust instrument included the following two provisions:

"**6.15.2 No Contest**. If any beneficiary hereunder or any other person shall, singly or in conjunction with any other person(s), in any manner, directly or indirectly, contest in any court the validity of this Agreement or of Trustor's Will or any Codicil thereto

2

(collectively, 'Will'); seek to obtain an adjudication in any proceeding or court that this Agreement, such Will or any provisions thereof are void; or otherwise seek to void, nullify or set aside this Agreement, Trustor's Will, or any provisions thereof, then the right of that person to take any interest given to him or her by this Agreement or by Trustor's Will shall be determined as it would have been determined had such person predeceased Trustor, without issue. Any proceedings that thwart the specific intentions and directives expressed in this Agreement or in Trustor's Will, or which frustrate Trustor's testamentary or other intentions, including actions for constructive trust, heirship proceedings, petitions to construe this Agreement and/or Trustor's Will, creditor's claims and the like shall be considered a direct or indirect contest of this Agreement. Any attempt by any person to obtain more than is provided for him or her in this Agreement or in Trustor's Will shall be considered a contest to this agreement and to Trustor's Will. Trustor hereby affirmatively states that she has no obligations, contractual or otherwise, to her daughters or to any of her daughters' family members, including, without limitation, a spouse (if any), companion (if any) and/or a daughter's issue. Therefore, any attempt by any of Trustor's children and/or issue to obtain more than is provided for any of them in this Agreement or under Trustor's Will shall be construed as a contest to this Agreement and to Trustor's Will. The Trustee is hereby directed to defend, at the expense of any trust estate governed by this Agreement, any contest or other attack of any nature on this Agreement, on any of its provisions and any amendments hereto, and on Trustor's Will, an attack of any nature on Trustor's estate planning and the inter vivos disposition, or disposition at death, of her assets and estate.

"**6.15.3 Expenses of Contest**. Notwithstanding the foregoing provisions of this Section 6.15, if the Trustee should be unsuccessful in defending any matter described in that Section and does not settle such action and if, for any reason, the gifts to and interests of the contestant under this Agreement and/or Trustor's Will are not forfeited, all of the costs of such defense shall be charged against the gifts to and interests of such contestant under this Agreement and/or Trustor's Will, and all gifts to and interests of the contestant under this Agreement and/or Trustor's Will shall be reduced on a dollar-for-

3

dollar basis by the aggregate net value, as determined by the Trustee, of all real and personal property passing or distributable to or for the benefit of the contestant as a result of such matter or action, including, without limitation, assets of the trust estate or Trustor's probate estate, insurance proceeds, employee benefits and deferred compensation. Accordingly, in making any settlement hereunder, the Trustee is directed to abide by these provisions to the extent possible."

On January 26, 2005, the same day she executed the 2005 trust, Connie also executed a document entitled "Instructions to Successor Trustee and to Agent" which provided that if any of her representatives (" my attorney, my accountant, my investment counsel, my trustee, my agent, any doctor or psychologist, or any other representative of mine") was called upon to testify to her intentions or her circumstances with respect to the inter vivos gifts and estate planning documents, the representative should be compensated at his or her "regular, usual and customary rate."

At about the same time Connie was examined by Dr. Stephen E. Francis, a licensed psychologist with a specialty in neuropsychology, who signed an affidavit in which he attested that, on the date she executed the 2005 trust instrument and related documents, she had sufficient capacity to do so. Connie also obtained six "certificates of independent review" from Eliot Lippman, an independent estate planning attorney. Lippman counseled Connie regarding the nature and consequences of each of the bequests Connie had made, including the gift to Juan, and attested that none was the product of fraud or undue influence.

On July 26, 2005, Connie resigned as trustee and Exchange Bank accepted the position of successor trustee.

Connie died on January 22, 2014.

On May 21, 2014, in the Marin County Superior Court, Susan filed an action against Juan for financial elder abuse, charging he had "systematically manipulated" Connie by unduly influencing and fraudulently inducing her to execute the 2004 and 2005 trust documents. Susan's complaint seeks: (1) a determination that those instruments are invalid; (2) a determination that the no contest clause of the 2005 trust is

4

unenforceable; and (3) an order directing the trustee to distribute the trust estate in accordance with the 1999 trust as amended by the 2000 trust amendment.

On May 23, 2014, Susan petitioned the Sonoma County Superior Court, sitting in probate, for a determination that Connie lacked testamentary capacity when she executed the 2004 and 2005 trust documents. Again, she charged that Juan had "systematically manipulated" Connie and sought the same relief as in the Marin County action.

On June 16, 2014, Exchange Bank, as trustee, petitioned the probate court in Sonoma County for instructions. Citing the provision of the 2005 trust that imposes a duty to defend at the trust's expense against any contest or other attack on Connie's estate plan, trustee requested an order confirming its authority to use funds in the trust estate to retain counsel to defend against Susan's two actions and to compensate Connie's representatives for all time spent in connection with their testimony in the two proceedings.

The following day, Susan filed her own petition for instructions in the Sonoma County probate court. She admitted that each of her two actions is a "contest" against Connie's estate plan, but argued that the defense-of-claims provision in the 2005 trust is a no-contest clause and that the trustee is prohibited from defending against either action until the courts resolve the two contests on their merits. On September 10, 2014, Susan filed a first amended petition seeking, among other things, an order determining that the 2005 instructions is not a trust instrument.

On October 15, 2014, following a hearing, the probate court granted trustee's petition and in a separate order denied Susan's petition. The court found that the defense provision is not a "no-contest" clause and that the trustee is authorized to use trust funds to defend against Susan's action to invalidate the 2005 trust and her related action for financial abuse of an elder. The court found further that the 2005 instructions are part of the trust agreement.

5

Susan timely appealed from the two orders. On March 17, 2015, trustee petitioned the probate court under Probate Code section 1310, subdivision (b),[1] for authority to comply with the October 15 orders, notwithstanding the automatic stay in effect under section 1310, subdivision (a). On June 2, 2015, the probate court issued an order granting trustee's petition. Thereafter, Susan filed a petition for writ of supersedes and/or mandate seeking review of the March 17 order. This court summarily denied Susan's writ petition.

## Discussion

Susan's principal contention is that the instructions to the trustee to defend her claims at the expense of the trust are in effect a no-contest clause that cannot be enforced unless and until it is ultimately determined that her claims lack merit and were brought without probable cause. In response to this court's request for additional briefing, the parties have also addressed whether the instructions to defend, included in the trust amendment the validity of which is disputed, can in any event be enforced prior to a judicial determination of the validity of the disputed trust instrument. Finally, Susan challenges the trial court's ruling that the 2005 instructions, which authorize payment to the trust's attorney and other trust representatives at their "regular, usual and customary rate" are enforceable.

---

[1]     Probate Code section 1310 provides in relevant part: "(a) Except as provided in subdivisions (b), (c), (d), and (e), an appeal pursuant to Chapter 1 (commencing with Section 1300) stays the operation and effect of the judgment or order. [¶] (b) Notwithstanding that an appeal is taken from the judgment or order, for the purpose of preventing injury or loss to a person or property, the trial court may direct the exercise of the powers of the fiduciary, or may appoint a temporary guardian or conservator of the person or estate, or both, or a special administrator or temporary trustee, to exercise the powers, from time to time, as if no appeal were pending. All acts of the fiduciary pursuant to the directions of the court made under this subdivision are valid, irrespective of the result of the appeal. An appeal of the directions made by the court under this subdivision shall not stay these directions."

All further statutory references are to the Probate Code unless otherwise indicated.

6

*1.     The provision in the trust instructing the trustee to defend against contests is not a no contest clause.*

The provision in the 2005 trust directing the trustee to defend against contests at the expense of the trust changes what the trustee's obligations would be in the absence of such a provision. Unless the language of a trust provides otherwise, a trustee is bound to deal impartially with all beneficiaries. (§§ 16000, 16003.) Hence, when a dispute arises as to who is the rightful beneficiary under a trust, involving no attack upon the validity or assets of the trust itself, the trustee ordinarily must remain impartial, and may not use trust assets to defend the claim of one party against the other. In *Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, the court rejected a request for attorney fees from an attorney who represented the trustee, who was also a beneficiary, in a challenge to the validity of a trust amendment that changed the beneficiaries of the trust. The court held that there was no basis for the recovery of expenses out of the trust assets because the dispute was between the competing beneficiaries and did not stand to benefit the trust itself. (*Id.* at p. 1230.) The court held that it would be inequitable to use trust assets to defend against the undue influence claim of the beneficiary named in the original trust document against those beneficiaries named in the amendment because if the former beneficiary prevailed she "would be required to finance her own trust litigation and that of her opponent, despite the fact she prevailed." (*Ibid.*) Even assuming "the existence of facts that would have led the trustee to believe the trust amendment was valid" (*id.* at p. 1230), the court held, "does not establish the objective reasonableness of the trustee's defense of the trust amendment. While it would not have been proper for the trustee to have allowed a default in the litigation, there was no basis for the trustee to have taken other than a neutral position in the contest. . . . [T]he parties primarily interested in the outcome of the litigation were [the beneficiary under the original trust document] on the one hand and [the beneficiaries under the amendment] on the other. To the extent [the attorney for the trustee] defended the amendment, he was not representing the interests of the trust or the trustee. [¶] . . . In situations such that presented here, counsel must seek

7

compensation from the parties who stand to gain from the litigation, not the trust." (*Id.* at pp. 1230-1231.)

The decision and reasoning of *Whittlesey* were approved and followed in *Terry v. Conlan* (2005) 131 Cal.App.4th 1445 under similar circumstances. There, the trustee under a trust amendment, who was one of the beneficiaries named in the amendment, was not permitted to recover attorney fees incurred in defending against the claim of the beneficiary named in the original trust agreement. The court held that the trustee "has not participated in this litigation as a neutral trustee to defend the trust and protect its assets; rather, she has consistently pursued her own interests and those of her siblings [beneficiaries under the trust amendment], to the detriment of [the beneficiary under the original trust instrument]. As such, she must bear her own costs in this litigation, rather than be reimbursed from the trust." (*Id.* at p. 1464.)

The trust agreements in *Whittlesey* and *Terry* did not contain an explicit directive to the trustee to defend claims challenging the validity of the amendment at the trust's expense, as does the trust instrument in the present case.[2] To avoid application of the holding in *Whittlesey,* such a provision has been recommended in authoritative form books. (See 2 Drafting Cal. Revocable Trusts (Cont.Ed.Bar 4th ed. 2014) No-Contest Clause and Miscellaneous Trust Provisions, §§ 19.4, 19.5, p. 19-6; 3 Cal. Will Drafting, (Cont.Ed.Bar 3d ed. 2014) §§ 35.9B, p. 35-12, 35.10, p. 35-14.) These sources suggest inclusion in a trust or will of an optional provision reading, in the case of a trust: "The trustee is authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions." (2 Drafting Cal. Revocable Trusts, *supra*, § 19.5, p. 19-6.) According to the Continuing Education of the Bar (CEB) book on drafting revocable trusts, "Drafters may want to authorize the trustee to defend a contest or an attack on the trust. . . . Without such a clause, the trustee might be hesitant

---

[2] Another distinction between the facts in *Whittlesey* and *Terry* and the present case is that the trustee in those two cases was also one of the beneficiaries whose interests were being challenged, whereas in this case there is an independent trustee. However, we perceive no significance to this distinction with respect to the issues before us.

to defend the trust because a court may rule that an attorney who represents the trustee in an unsuccessful defense of a trust contest is not entitled to have fees paid from the trust." (2 Drafting Cal. Revocable Trusts, *supra*, § 19.4, p. 19-6, citing *Whittlesey v. Aiello, supra,* 104 Cal.App.4th 1221.) The authorization to defend in the documents before us is even more expansive than the provision suggested by the CEB, leaving no doubt as to the intention of the amendment's drafters.

The optional provision in the CEB form books is recommended as an addition to a standard no-contest clause. Susan contends that the authorization to defend her claim at the trust's expense is in fact part of a no-contest clause and therefore subject to the restrictions that now apply to the enforcement of such a provision, specifically the prohibition against enforcing such a provision unless it is determined that the contest was brought without probable cause. While Susan is correct that the defense directive is included in the same paragraph of the 2005 trust instrument as the forfeiture provision, under the heading "No Contest," and in that sense is "part of" the no-contest clause, as it is in the CEB form books, that fact does not resolve the issue. The question is not whether that directive is part of the no-contest clause, but whether the California statute prohibits enforcement of this directive without a determination that Susan's claims have been asserted without probable cause. Under the governing Probate Code provisions, the determination of this issue turns on whether the defense directive "penalizes" Susan within the meaning of section 21310, subdivision (c).

The evolution of California law governing the enforcement of no-contest clauses in a trust instrument is summarized by our Supreme Court in *Donkin v. Donkin* (2013) 58 Cal.4th 412, 422-427. Under the current statutory scheme, applicable to trust instruments that became irrevocable on or after January 1, 2001, a "no contest clause" may not be enforced in response to a "direct contest" to a trust absent a determination that the contest was brought without probable cause. (§ 21311, subd. (a)(1).) [3] A "no contest clause" is

_____

[3] Subdivision (a) of section 21311 provides: "A no contest clause shall only be enforced against the following types of contests: [¶] (1) A direct contest that is brought without probable cause. . . ." Subdivision (b) of section 21311 provides: "For the

9

defined as "a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary files a contest with the court." (§ 21310, subd. (c).) A "contest" is defined as "a pleading filed with the court by a beneficiary that would result in a penalty under a no contest clause, if the no contest clause is enforced." (§ 21310, subd. (a).) A "direct contest" is a contest that alleges the invalidity of an instrument such as a trust or will, or any of the terms of such an instrument, based on any of specified grounds including lack of capacity or undue influence. (§ 21310, subd. (b).)

Susan does not dispute that her lawsuits are direct contests within the meaning of the statute. As indicated, she contends that the directive to defend against her contests is part of the trust's no-contest clause and is unenforceable unless and until a determination has been made that she filed the contests without probable cause.

The interpretation of a will or a trust presents a question of law subject to our independent review "unless interpretation turns on the credibility of extrinsic evidence or a conflict therein." (*Burch v. George* (1994) 7 Cal.4th 246, 254.) The interpretation of section 21310 is also subject to de novo review. (*Bradley v. Gilbert* (2009) 172 Cal.App.4th 1058, 1068.)

Susan argues that the instruction to defend at the trust's expense comes within the statutory definition of a no-contest clause because it penalizes her for contesting the terms of the trust. She asserts that the provision does so "by reversing the otherwise applicable law requiring the competing beneficiaries to bear their own legal expenses in a contest of this nature." She continues, "The law is clear that absent the no contest directive, the trustee could not assume the contests' defense at the trust's expense. Plainly, the no contest directive is intended to reverse this law and disadvantage Susan by requiring her to prosecute the case 'out-of-pocket,' when Juan and the other proponent beneficiaries need not expend anything on their defense. This litigation posture

purposes of this section, probable cause exists if, at the time of filing a contest, the facts known to the contestant would cause a reasonable person to believe that there is a reasonable likelihood that the requested relief will be granted after an opportunity for further investigation or discovery."

10

indisputably disadvantages Susan as the contestant: *no* contesting beneficiary would ever prefer it, *every* defending beneficiary would."

Trustee disputes that the directive that the trustee defend at the trust's expense is a "penalty" within the meaning of section 21310, subdivision (a), or that "penalize" as used in subdivision (c) includes any provision that in any way "disadvantages" a beneficiary. Trustee argues that these terms must be interpreted in the context in which no-contest clauses have been understood historically. Prior to 1989, the Probate Code did "not generally deal with no contest clauses." (See Legis. Counsel's Digest, Assem. Bill No. 158, Stats. 1989, ch. 544 (1989-1990 Reg. Sess.) Summary Dig., pp. 176-177.)[4] Neither the common law nor prior California case law provides an explicit uniform definition of a no-contest clause, but in the context of deciding other issues—frequently whether a particular application to the court constituted a contest violating the clause— the cases uniformly assumed that a no-contest clause is, as trustee contends, one that "takes away or reduces" or results in a forfeiture of a beneficiary's share under a trust or will as a result of the contest. (E.g., *Estate of Black* (1984) 160 Cal.App.3d 582, 586 [A no contest clause "impos[es] a penalty of forfeiture against beneficiaries who challenge" the instrument.].) In *Burch*, the court explained, "An in terrorem or no contest clause in a will or trust instrument creates a condition upon gifts and dispositions provided therein. [Citation.] In essence, a no contest clause conditions a beneficiary's right to take the share provided to that beneficiary under such an instrument upon the beneficiary's agreement to acquiesce to the terms of the instrument." (*Burch v. George, supra,* 7 Cal.4th at p. 254.) The condition "results in a forfeiture" if not satisfied. (*Ibid.*) "What these clauses generally provide is that a beneficiary under the will must take exactly as the testator provided or not at all. Directed against beneficiaries who are also heirs, the

---

[4]     Although not using the term "no-contest clause," former section 6112, subdivision (d) provided that a "provision in a will that a person who contests or attacks the will . . . *takes nothing under the will or takes a reduced share* does not apply to a contest or attack on a provision of the will that benefits a witness to the will." (Stats. 1988, ch. 1199, § 75, italics added.)

11

forfeiture penalties are used to induce disappointed survivors to take a lesser benefit under the will rather than risk an all or nothing gamble by contesting probate . . . ." (Leavitt, *Scope and Effectiveness of No-Contest Clauses in Last Wills and Testaments* (1963) 15 Hastings L.J. 45.)

Probate Code provisions first adopted in 1989 were intended to codify "much of the law governing enforcement of no contest clauses." (*Burch v. George, supra,* 7 Cal.4th at p. 254, fn. 6.) The definition of a no-contest clause as a provision that "*penalizes*" a beneficiary for filing a contest first appeared in the Probate Code in former section 21300, subdivision (b) (Stats.1989, ch. 544, § 19, p. 1825), then moved a year later to former section 21300, subdivision (d) (Stats. 1990, ch. 79, § 14, p. 463), and finally moved, unchanged, in 2008, to section 21310, subdivision (c) (Stats. 2008, ch. 174, § 2, p. 567).[5] The legislative history of these provisions contains no explicit discussion of the intended scope of the terms "penalty" and "penalize." However, the recommendation of the California Law Revision Commission that preceded adoption of the 1989 legislation began with the statement, "A will, trust, or other instrument may contain a no contest, or *in terrorem,* clause to the effect that a person who contests or attacks the instrument or any of its provisions takes nothing under the instrument or takes a reduced share." (Recommendation Relating to No Contest Clauses (1990) 20 Cal. L. Revision Com. Rep. p. 11.) The commission recommended the definition of a no-contest clause in substantially the same form as in the current statute ("a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary brings a contest") with the comment that the definition section "is intended for drafting convenience." (*Id*. at p. 15.) The term "no contest clause," the comment states, "has been used in the literature, as well as the term 'in terrorem clause,' to describe a provision of

---

[5]     The language undoubtedly was taken from the Uniform Probate Code which, as approved by the National Conference of Commissioners on Uniform State Laws and by the American Bar Association in August 1969, and as revised in 2010, reads: "A provision in a will purporting to penalize any interested person for contesting the will or instituting other proceedings relating to the estate is unenforceable if probable cause exists for instituting proceedings. (U. Prob. Code, § 3-905.)

the type defined in this section." (*Ibid.*) More tellingly, the comment also states that this definition of a no-contest clause "supersedes a portion of former subdivision (d) of Section 6112 ('a provision in a will that a person who contests or attacks the will or any of its provisions takes nothing under the will or takes a reduced share')." (*Id*. at p. 16.) The comment points out that the new provision, unlike former section 6112, governs trusts and other donative transfers as well as wills. (*Ibid.*) But the comment says nothing to suggest that the new definition expands the reach of a no-contest clause beyond providing that one who contests a donative instrument "takes nothing" or "takes a reduced share." (*Id*. at pp. 15-16.)

Numerous legislative analyses of the no-contest provisions as they were adopted in 1989 and amended in 1990 refer to a no-contest clause as a provision "that provides that a person who contests the will shall take nothing or a reduced share." (E.g., Legis. Counsel's Dig., Assem. Bill No. 158, *supra*, Summary Dig., p. 176; Sen. Com. on Judiciary on Assem Bill No. 158, as amended Aug. 21, 1989, p. 1; Sen. Rules Com. on Assem. Bill No. 158, p. 1; Recommendation Proposing New Probate Code (Dec. 1989) 20 Cal. Law Revision Com. Rep., pp. 1978-1979.) There is nothing in this history that suggests an intention to treat anything other than the forfeiture of all or a portion of a gift as a penalty to which section 21310 refers. When in 2008 the Law Revision Commission suggested further revisions to the no-contest clause statute, to simplify and clarify those provisions and extend the probable cause provision to all direct contests, no change in the statutory definition of a no-contest clause was recommended. Yet the Commission's report again begins with the statement, "A no contest clause (also called an *in terrorem* clause) is a provision inserted in a will, trust, or other instrument to the effect that a person who contests or attacks the instrument or any of its provisions takes nothing under the instrument or takes a reduced share." (Recommendation on Revision of No Contest Clause (2007) 37 Cal. Law Revision Com. Rep. p. 363; see also p. 361.)

Susan has not cited any authority applying section 21310 in the broad manner she suggests. To the contrary, numerous decisions rendered after adoption of the current statutory definition continue to reflect the same understanding of a no contest clause as

13

one that takes away or reduces a beneficiary's interest. (*Estate of Katleman* (1993) 13 Cal. App. 4th 51, 65, fn. 7 ["The statutory definition of a no contest clause as a 'penalty' implies that a no contest clause *takes away* or *reduces* the gifts of persons *provided for* in the will if they contest it."]; see also *Burch v. George*, *supra,* 7 Cal.4th at p. 254.) In the most recent Supreme Court pronouncement dealing with the enforcement of a no-contest clause, the Court has again reaffirmed that "[a]n in terrorem or no contest clause in a trust instrument 'essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument.' " (*Donkin v. Donkin, supra,* 58 Cal.4th at p. 422.)[6]

Susan argues that if the defense directive is not considered a part of the no-contest clause, her share in the estate will be reduced even if she prevails in the litigation. She explains that if she is successful in striking the later amendments, she and her sister will be reinstated as the sole residual beneficiaries and the cost of the defense will have reduced the trust residue to which they are entitled. The same is true, however, for the beneficiaries named in the disputed trust amendment. If the trustee prevails against Susan's contest, they will remain the residual beneficiaries and their share of the residue will also have been reduced by the cost of the defense. In short, assuming probable cause for Susan's claims, whoever prevails ultimately bears the costs of the defense. While Susan is required to bear her costs "out-of-pocket," that would be the case regardless of whether the trust assumes the cost of defense. The fact that the adverse parties in interest are not similarly burdened is not a penalty imposed on Susan but an unavoidable

---

[6]    In complete accord, the current Restatement of the Law of Property provides, under the caption "No-Contest Clauses," as follows:"A provision in a donative document purporting to rescind a donative transfer to, or a fiduciary appointment of, any person who institutes a proceeding challenging the validity of all or part of the donative document is enforceable unless probable cause existed for instituting the proceeding." (Rest. of the Law of Property, Wills and Other Donative Transfers (2003) § 8.5, p. 194.) Comment a to this section states, "A no-contest clause typically provides for the rescission of any benefit to a devisee, beneficiary, or done who challenges the validity of the document, or of a term of the document." (*Ibid.*)

14

consequence of the situation; if anything, a benefit to the other parties. If the rule were otherwise and the beneficiaries named in the amendment were unable to assume the costs of defense, there would be no means to defend implementation of the trustor's intentions in amending the trust even if the challenger's attack on the amendment were entirely unfounded.

Indeed, the unavoidable realities of the situation provide an additional reason why the defense directive to the trustee cannot be construed as a no-contest clause. A provision eliminating or reducing a gift to a beneficiary who without probable cause attacks the validity of a trust or other donative instrument can sensibly be applied after the merits of the underlying challenge have been determined. Under the conventional understanding of a no-contest clause—as a provision removing or reducing what is otherwise given to the contesting party—the provision need not and cannot be enforced until it is known whether the contest has merit. If, on the other hand, the directive to the trustee to defend the challenge were construed as a no-contest clause, which could be enforced only after it was determined that the underlying challenge lacked merit and was brought without probable cause, the trustee would have no means of knowing whether the instruction should be observed prior to resolution of the merits of the underlying controversy. The trustee would be unable to comply with the directive until after the litigation had been concluded, rendering the directive meaningless. As a fundamental matter of statutory interpretation, such an absurdity is to be avoided. (E.g., *California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.)

It should be noted that this conclusion does not imply that all of the provisions of sections 6.15.2 and 6.15.3 of the 2005 trust instrument may be enforced. The portion of section 6.15.2 that directs the trustee to defend the underlying contest at the expense of the trust estate was properly determined by the trial court not to be a no-contest clause within the meaning of section 21310, subdivision (c). However, the provisions of sections 6.15.2 and 6.15.3 that purport to reduce or eliminate the amounts otherwise distributable to a beneficiary filing a contest appear to come squarely within the definition of a no-contest clause. Although the issue is not presented in this appeal, those provisions appear

15

unenforceable unless it is determined that Susan's challenges have been brought without probable cause.

In summary, we agree with the trial court's conclusion that the defense directive is not an element of the no-contest clause.

2.      *The provision in the trust instructing the trustee to defend against contests is enforceable prior to the determination of the merits of Susan's challenges.*

"On acceptance of the trust, the trustee has a duty to administer the trust according to the trust instrument and, except to the extent the trust instrument provides otherwise, according to this division." (§ 16000.) "A trustee has the following powers without the need to obtain court authorization: [¶] (a) The powers conferred by the trust instrument. [¶] (b) Except as limited in the trust instrument, the powers conferred by statute. [¶] (c) Except as limited in the trust instrument, the power to perform any act that a trustee would perform for the purposes of the trust under the [applicable] standard of care . . . ." (§ 16200.) "The grant of a power to a trustee, whether by the trust instrument, by statute, or by the court, does not in itself require or permit the exercise of the power. The exercise of a power by a trustee is subject to the trustee's fiduciary duties." (§ 16202.) These powers and corresponding duties of the trustee remain in effect until the trust is terminated. (§ 15407; 13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 193, pp. 775-776.) As a power conferred by the instrument, the power to defend against contests remains in effect until the trust, or as in this case the trust amendment, is judicially invalidated or otherwise terminated.

There is some logic to Susan's contention that since the validity of the amendment conferring the trustee with the authority to defend her claims is the very subject of the litigation and has not yet been adjudicated, enforcement of the defense directive should await the outcome of the litigation. Susan analogizes the situation to a contest to the probate of a will, in which the executor named in the proffered will may not use estate assets for the costs of defending the challenge until the contest has been resolved and the will admitted to probate. (*Henry v. Superior Court* (1892) 93 Cal. 569; *Estate of Pereira* (1961) 191 Cal.App.2d 369.) However, an executor has neither authority nor

16

responsibility to carry out the terms of a will until the will has been admitted to probate (see § 8250, subd. (b) [person named as executor in a will under no duty to defend a contest until appointed personal representative]), whereas, as pointed out above, the trustee under an inter vivos trust has such authority once assuming the position of trustee.

A person challenging the validity of a trust instrument on the grounds that the trustor lacked capacity to execute the document or did so under the undue influence of another carries the heavy burden of proving such allegations. Section 810, subdivision (a) creates "a rebuttable presumption affecting the burden of proof that all persons have the capacity to make decisions and to be responsible for their acts or decisions." Under section 811, a determination that a person lacks the capacity to execute a trust must be supported by evidence of a deficit in at least one of specified mental functions that "by itself or in combination with one or more other mental function deficits significantly impairs the person's ability to understand and appreciate the consequences of his or her actions with regard to the type of act or decision in question." (§ 811, subds. (a), (b).) And in determining capacity to execute a trust amendment that "in its content and complexity, closely resembles a will or codicil," such as the amendment in this case, the courts have held that the lower mental capacity standard for the making of a will should apply. (*Andersen v. Hunt* (2011) 196 Cal.App.4th 722, 729-731; *Lentz v. Lentz* (2014) 222 Cal.4th 1346, 1351-1352; § 6100.5.) "[T]he standard for testamentary capacity is exceptionally low." (*In re Marriage of Greenway* (2013) 217 Cal.App.4th 628, 642.) Similarly, "the party contesting a testamentary disposition bears the burden of proving undue influence" and "[u]ndue influence must be proven by clear and convincing evidence." (*Conservatorship of Davidson* (2003) 113 Cal.App.4th 1035, 1059, disapproved on other grounds in *Bernard v. Foley* (2005) 39 Cal.4th 794, 816, fn. 14; § 8252, subd. (a).) It is entirely consistent with these principles that the trust should ordinarily be administered according to its terms unless and until the party challenging its validity sustains its heavy burden of proof.

This is not to say that a contestant is without recourse in appropriate circumstances. Upon a sufficient showing, the party contesting the validity of a trust

instrument may seek a preliminary injunction, which is within the probate court's discretion to grant. (Code Civ. Proc., § 526; *Stevens v. Torregano* (1961) 192 Cal.App.2d 105, 111). Such an application would allow the court to weigh the equities and enjoin the use of trust assets to defend a challenge upon a proper showing of likelihood of success. (See *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999 ["In deciding whether to issue a preliminary injunction, a trial court weighs two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction."].) The same equitable considerations may properly be considered by the probate court in acting on petitions for instructions under section 17200 and in ruling on a motion under section 1310, subdivision (b) to authorize the trustee to act upon an order that is under appeal. (§ 17206 ["The court in its discretion may make any orders and take any other action necessary or proper to dispose of the maters presented by [a petition under section 17200]."]; see, e.g., *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 427-428; cf. *Estate of Denton* (1971) 17 Cal.App.3d 1070, 1074-1076.)

Susan made no explicit request for preliminary relief in the trial court. Nor, in her papers opposing trustee's petition, supporting her own petition, or opposing the motion under section 1310, subdivision (b), did she provide any evidence based on which the court might have invoked such equitable considerations in acting on the applications before it. Susan made no attempt to establish that she is likely to prevail in her challenges to the validity of the trust amendment or that the balance of equities favors denying trustee the authority to defend her actions at the expense of the trust. On the other hand, trustee presented substantial evidence tending to negate the allegations of incapacity and undue influence, and there is no showing that the beneficiaries under the 2005 trust amendment have the resources to defend her actions if the trustee may not do so at trust expense. Under these circumstances, the probate court did not abuse its discretion in authorizing trustee to defend at trust expense the validity of the trust amendment.

3. *The 2005 instructions are enforceable as part of the 2005 trust.*

Susan contends that the "2005 Instructions to Successor Trustee and to Agent" (2005 instructions) are inter vivos instructions that are no longer enforceable after Connie's death. While the 2005 trust document authorizes the trustee to defend Susan's challenge at the expense of the trust, the 2005 instructions contain the additional authorization to pay the trust's attorney and other trust representatives "at his or her regular, usual and customary rate for all time expended."[7] Thus, although we have concluded that the defense directive in the 2005 trust is not a no-contest provision and may be enforced prior to the determination of the merits of Susan's challenge to the trust amendment, the validity *vel non* of the 2005 instructions has independent significance requiring resolution at this point.

In the trial court, the trustee argued that the instructions are a valid amendment to the 2005 trust, executed contemporaneously with the 2005 trust instrument, and the court agreed that the instructions are "a part of" the 2005 trust. Susan disputes this conclusion, contending that this document was a separate inter vivos instruction that terminated on Connie's death.

The 2005 trust provides that the trustor shall have the right to "modify, alter and amend any of the provisions, terms or conditions" of the trust "by an instrument signed by her and delivered to the trustee." Under this provision, any instrument that manifests an intent to amend the trust will be enforceable as an amendment to the trust. (*Cook v. Cook* (2009) 177 Cal. App. 4th 1436, 1442 [amendment that satisfies procedural

---

[7]     The 2005 instructions provide in relevant part: "I, Constance Doolittle, as the Trustor of the Constance Doolittle Trust UTD November 5, 1999 ('Trust'), as amended, and on behalf of myself as an individual, hereby instruct the successor trustee of the Trust and my agent under a durable power of attorney, that in the event any one or more of my attorney, my accountant, my investment counsel, my trustee, my agent, any doctor or psychologist, or any other representative of mine . . . is called upon to testify on my behalf as to my intentions or my circumstances with respect to my inter vivos gifts and estate planning documents, I hereby instruct my said successor trustee and my agent to compensate such representative at his or her regular, usual and customary rate for all time expended by such representatives with regard to such testimony . . . ."

19

requirement under the terms of the trust and "clearly manifest[s]" trustor's intent to amend is enforceable.].)

Susan contends that the language used in the instructions does not manifest an intent to amend the terms of the trust. She argues, "The instructions' language is in the conjunctive, directed at both Connie's successor trustee and her agent under her durable power of attorney. A durable power of attorney can only operate while the principal is alive; death terminates the agency relationship. [Citation.] The instructions could only be enforceable during Connie's lifetime since her agent cannot act under a durable power of attorney post mortem. Moreover, Connie did have a successor trustee during her lifetime: Exchange Bank, which replaced Connie as trustee only six months after she signed the 2005 Amendment. Accordingly, the subject instrument was aimed at potential inter vivos actions. [Citation.] [¶] That the instructions apply to persons called upon to testify on Connie's behalf reinforce the conclusion that they expired on her death. When an individual is deceased, no one can testify on her behalf. Finally, in contrast to the Instructions, the separate instructions to Ms. Marois [Connie's estate planning attorney] that Connie signed the same day expressly apply to services that Ms. Marois may render both 'before and after my death . . . .' The instructions contain no such language." (Italics omitted.)

Susan also argues that extrinsic evidence demonstrates that the instructions were intended to terminate upon Connie's death: "After Connie's death, Ms. Marois prepared and sent a section 16061.7 notification to the trust's beneficiaries on behalf of Exchange Bank as the trustee, listing and enclosing each of the documents constituting the 'terms of the trust' and informing the beneficiaries of the deadline to contest the trust or any of its terms. The instructions, however, were not among the documents listed in and enclosed with the section 16061.7 notification. Ms. Marois' cover letter likewise listed the trust documents without including the instructions. Had there been any intent that the instructions would constitute a trust amendment, Ms. Marois would have identified them

20

as part of 'the terms of the trust' and enclosed them with the trustee's section 16061.7 notification."[8] We disagree.

While there may be an ambiguity as to whether the instructions were intended to remain in effect after Connie's death, substantial evidence supports the trial court's finding that the 2005 instructions were so intended. Susan is correct that Connie's agent cannot act after her death, but her successor trustee clearly can. The absence of the instructions from the documents listed in the section 16061.7 notice provides little evidence of Connie's intent. The list does not purport to be exhaustive. The instructions were signed contemporaneously with the execution of the 2005 trust instrument and amplify the defense directive in the trust amendment. Assuming the validity of the amendment, the provisions of the 2005 trust, including the defense directive and fee

---

[8]      Under section 16061.7, a trustee is required to serve notice on the beneficiaries when a revocable trust becomes irrevocable because of the death of one or more of the settlors of the trust. (*Id.*, subds. (a)(1), (b)(1).) The notification "shall contain the following information: [¶] (1) The identity of the settlor or settlors of the trust and the date of execution of the trust instrument. [¶] (2) The name, mailing address and telephone number of each trustee of the trust. [¶] (3) The address of the physical location where the principal place of administration of the trust is located, pursuant to Section 17002. [¶] (4) Any additional information that may be expressly required by the terms of the trust instrument. [¶] (5) A notification that the recipient is entitled, upon reasonable request to the trustee, to receive from the trustee a true and complete copy of the terms of the trust." (*Id.*, subd. (g).)

The notice served in this case complied with subpart (5) as follows: "Upon reasonable request to the trustee, you are entitled to receive a true and correct copy of the terms of the trust. The trustee has elected to provide a true and correct copy of the trust with this notice. The following copies of documents are attached to this notice: [¶] A. Second Amended and Restated Trust Agreement of the Constance Doolittle Trust UTD November 5, 1999 (signed by Constance Doolittle on January 26, 2005); [¶] B. Resignation of Trustee and Consent to Act — Constance Doolittle Trust UTD November 5, 1999 (signed by Constance Doolittle on July 26, 2005 and by Exchange Bank on July 27, 2005); [¶] C. Appointment of Successor to Thomas W. Smith to Remove Trustee and Appoint Independent Corporate Trustee Pursuant to Subsection 4.5.1 of the Constance Doolittle (sic) UTD November 5, 1999, as Amended (signed by Thomas W. Smith on March 28, 2005); and [¶] D. Declination of Thomas W. Smith to Act with Respect to the Constance Doolittle Trust UTD November 5, 1999, as Amended, and Revocation of Conditional Appointment of Successor (signed by Thomas W. Smith on May 5, 2006)."

21

shifting provision, evidence a clear intent to discourage and forcefully oppose any challenges to the trust amendment. There is no reason to believe that the instruction to compensate at their regular rates all representatives for time spent in defense of the amendment was intended to terminate upon Connie's death. Connie obviously anticipated the possibility of a challenge after her death and there is no logical reason why she would have wanted her representatives to be compensated less generously for defending a contest after her death than for a contest before her death. Accordingly, we find no error in the court's conclusion that the 2005 instructions are enforceable as part of the 2005 trust.

## Disposition

The trial court's orders are affirmed. The trustee shall recover its costs on appeal.

_____
Pollak, Acting P.J.

We concur:

_____
Siggins, J.

_____
Jenkins, J.

22

Trial Court:                                    The Superior Court of Sonoma County

Trial Judge:                                    Honorable Michael Byrne

Counsel for plaintiff and appellant:            HARTOG & BAER, P.C.
                                                David W. Baer
                                                John A. Hartog
                                                Laura C. Roche

Counsel for defendant and respondent:           ABBEY, WEITZENBERG, WARREN &
                                                EMERY
                                                Lewis R. Warren
                                                Michael R. Wanser

                                                REED SMITH LLP
                                                Paul D. Fogel
                                                Dennis Peter Maio

                                                FRANCESCHINI FREITAS LLP
                                                Richard Thomas Franceschini

A143422