Filed 6/5/25  Sehremelis v. Sehremelis CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| PETER SEHREMELIS et al., | |
| Plaintiffs and Appellants, | G062738 |
| v. | (Super. Ct. No. 30-2016-00875465) |
| ANDREA SEHREMELIS et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from orders of the Superior Court of Orange County, David L. Belz, Judge. Affirmed.

Bunt & Shaver and David N. Shaver for Plaintiffs and Appellants.

Klapach & Klapach and Joseph S. Klapach for Defendants and Respondents.

Appellants Peter Sehremelis, John Sehremelis, and Froso Sehremelis challenge the trial court's orders approving accountings for their father's family trust. They contend the court erred by ordering that attorney fees the trustees incurred in litigation be paid from the trust estate. And they assert the court erred by authorizing certain trustee fees for a former trustee, their brother Andrea Sehremelis (Andy), based on inadmissible evidence.[1] As discussed below, we find no error and therefore affirm.

FACTS

I.

THE TRUST

In 2014, George Sehremelis established a trust and transferred all his property to it, including his substantial real estate holdings.[2] The trust provided for George's living children to become beneficiaries upon his death. It expressed George's desire that his real estate holdings be maintained "for the long term benefit of his children and [grandchildren]." The trust also included a termination clause, which provided: "Notwithstanding the foregoing provisions, upon the approval of a majority of [George's] then living children, the trust may be terminated . . . ."

Through a subsequent amendment, George named two successor cotrustees, Andy and Joseph Ressler (George's accountant).[3] Among other powers, the trust authorized the trustees to "commence or defend such

---

[1] For clarity, we refer to all members of the family by their first names. We refer to Andy in accord with the parties' briefing.

[2] George later executed a pour-over will, devising his entire estate to the trust.

[3] We refer to Andy and Ressler together as respondents.

litigation with respect to the trust or any property of the trust estate as the trustee[s] may deem advisable, at the expense of the trust." It further authorized them to "defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions."

## II.

### GEORGE'S DEATH AND ENSUING LITIGATION

George passed away in 2016. At the time of his death, he had four living children: appellants and Andy. Shortly after, appellants sent respondents' attorneys a written demand to terminate the trust pursuant to the termination clause. After respondents declined to terminate the trust, appellants petitioned the trial court for an order terminating the trust. Appearing as cotrustees of the trust, respondents opposed the petition and argued, inter alia, that the termination clause's language was merely "precatory" and did not entitle appellants to terminate the trust.[4]

In 2019, following a bench trial, the trial court ordered the termination of the trust and the liquidation of trust assets, concluding that the termination clause allowed the majority of George's surviving children to terminate it. The court also decided, sua sponte, to remove respondents as trustees and appoint Wells Fargo Bank as trustee to oversee the trust's liquidation. It ordered that Andy would continue to act as the trust's "special agent" in the closing of certain real estate transactions. Respondents appealed these rulings.

---

[4] Precatory words are "expressions of requests, desires, or recommendations, as distinguished from commands." (Black's Law Dict. (12th ed. 2024) p. 1424.)

3

In 2020, this court affirmed the trial court's orders terminating the trust and removing Andy as trustee.[5] However, we reversed the removal of Ressler as trustee and the appointment of Wells Fargo.

## III.

### ACCOUNTINGS

From 2017 to early 2021, respondents filed four accountings of their management of the trust. In late 2021, Ressler alone filed a fifth accounting. Among other things, these accounts reported and sought approval for the payment of: (1) about $336,000 in attorney fees to Stevenson Law Office for litigating the termination clause on behalf of respondents; (2) about $104,000 in attorney fees to Klapach & Klapach for litigating the related appeal; and (3) about $1.6 million in extraordinary trustee fees for Andy, related to various real estate transactions (the trustee commissions). Appellants objected to the payment of these attorney and trustee fees from the trust estate. The parties stipulated to appoint a referee to hear and determine the reasonableness and necessity of these payments, among other issues.

## IV.

### TRIAL AND RULINGS

At the trial before the referee, Andy testified that after his father's death, he considered hiring Wells Fargo to serve as an institutional trustee for the trust. According to Andy, he met with Wells Fargo personnel, who provided him a fee schedule listing the bank's fees for trustee work.

---

[5] As to Andy's removal, we stated that "the hostility and lack of trust between [him] and his siblings would impair the administration of the trust." (*Sehremelis v. Sehremelis* (Nov. 20, 2020, G057541) [nonpub. opn.].)

4

Under the fee schedule, Wells Fargo would have charged an up-front fee of $540,000 and, when managing real estate sales, an additional fee of up to 10 percent of gross sales. As to the listed flat fee, Andy confirmed in response to questioning that "Wells Fargo [wa]s telling [him,] we are going to charge you a flat fee of $540,000." Andy was able to negotiate the additional fee to between 3 and 5 percent, but ultimately did not hire Wells Fargo. The fee schedule was admitted into evidence over appellants' hearsay objection.

Andy proceeded to testify about his efforts to sell the trust's real properties, which yielded many millions of dollars for the trust, despite significant challenges. For these transactions, Andy billed 2 to 3 percent of each property's sale value and 0.5 percent for loans he facilitated, in addition to other trustee fees.

Following trial, the referee issued findings and recommendations in which she commended respondents' work and the financial outcomes they had achieved for the trust. She recommended approving the requested attorney fees for Stevenson Law Office and Klapach & Klapach. The referee also recommended approving about $1.12 million in trustee commissions for Andy. The trial court adopted the referee's findings and recommendations as its orders. Appellants filed a timely notice of appeal.

DISCUSSION

Appellants challenge the trial court's approval of the attorney fees and Andy's trustee commissions. They contend that the termination-clause litigation did not benefit the trust and thus that related attorney fees should not be borne by the trust estate. As for the trustee fees, they claim the court's ruling rested on inadmissible hearsay evidence—the Wells Fargo fee schedule.

As discussed below, we conclude the attorney fees were properly charged to the trust estate based on the broad authority the trust gave respondents to direct litigation concerning the trust.[6] As for the fee schedule, we conclude it was admissible for a nonhearsay purpose.[7]

## I.

## ATTORNEY FEES

*A. Governing Law*

"A trustee is entitled to the repayment out of trust property for the following: [¶] (a) Expenditures that were properly incurred in the administration of the trust. [¶] (b) To the extent that they benefited the trust, expenditures that were not properly incurred in the administration of the trust." (Prob. Code, § 15684.) "'[A]mong the ordinary powers and duties of a trustee of a private trust are those of doing all acts necessary and expedient to collect, conserve and protect the property of the trust, to maintain and

---

[6] In their opening brief, appellants contended that attorney fees relating to litigation of Andy's removal as trustee should be charged to the trust estate. But in their reply brief, they concede that fees expended on "work performed opposing the trustees' removal" are properly borne by the trust. We therefore do not address the portion of the fees relating to Andy's removal. Additionally, given our conclusion on the merits that the trial court did not err in approving the attorney fees, we need not address respondents' contention that prior litigation barred appellants' challenge under the law of the case doctrine.

[7] In appellants' opening brief, appellants argued that *if* we agree the fee schedule should have been excluded, "then there is no evidence to support the approval of [Andy's trustee commissions]." Because we conclude the schedule was properly admitted, we do not address the sufficiency of the evidence. In their reply brief, appellants assert that, regardless of the fee schedule, Andy's trustee commissions were excessive. By failing to raise this contention in their opening brief, they have forfeited the argument. (*People v. Tully* (2012) 54 Cal.4th 952, 1075.)

defend the integrity of the trust for the benefit of the beneficiaries and to employ such assistants as may be necessary for said purposes.' [Citation.]" (*Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1226 (*Whittlesey*).) In the context of litigation concerning the trust, courts will allow payment of attorney fees from the trust estate if the litigation was "'a benefit and a service to the trust.' [Citation.]" (*Id.* at p. 1230.) If the trustee intervenes in a dispute between two beneficiaries to represent "the interests of one side of the dispute over the other, [rather than] the interests of the trust or the trustee" (*id.* at p. 1231), the trustee must generally bear his or her own costs (*id.* at pp. 1230–1231).

The provisions of the trust instrument can modify the ordinary powers of the trustee. (Prob. Code, § 16200.) This includes the trustee's authority to direct litigation at the trust's expense. (*Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 537–538 (*Doolittle*).) In *Doolittle*, an amendment to the trust directed the trustee to defend, at the expense of the trust estate, "any contest or other attack of any nature" on the trust, its provisions, or its amendments. (*Id.* at p. 534.) A beneficiary later challenged the validity of amendments that changed the disposition of the trust estate. (*Id.* pp. 532, 535.) Although the contest involved only the disposition of trust assets among beneficiaries, the court authorized the trustee to use trust funds in defending against the challenge, concluding that the amendment's defense provision mandated this. (*Id.* at pp. 532, 537–538.)

If the trust instrument grants the trustee discretion to engage in litigation at trust expense, the court will not interfere except to prevent the trustee from abusing that discretion. (*Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1209 ["If discretion is conferred upon the trustee in the exercise of a power, 'the court will not interfere unless the trustee . . . acts dishonestly, or

7

with an improper . . . motive, . . . or acts beyond the bounds of a reasonable judgment" (italics omitted)].) "We review the trial court's order that attorney fees may be payable from trust income under the abuse of discretion standard. [Citation.]" (*Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1461 (*Terry*).)

*B. Analysis*

The trial court did not abuse its discretion in authorizing the payment of the challenged attorney fees from the trust estate. The terms of the trust authorized the trustees to "commence or defend such litigation with respect to the trust" as the trustees deemed advisable, "at the expense of the trust." Pursuant to this grant of authority, respondents chose to intervene in the litigation initiated by appellants, whose ultimate goal was to terminate the trust. Given the trust's declaration of George's intent that the trust's real estate holdings be administered by the trustees "for the long term benefit of his children and [grandchildren]," the respondents' decision was not unreasonable.[8] Accordingly, the trial court properly approved the payment of the challenged fees from the trust estate. (*Doolittle, supra*, 241 Cal.App.4th at pp. 537–538; *Hearst v. Ganzi, supra*, 145 Cal.App.4th at p. 1209.)

---

[8] We do not evaluate the merits of respondents' position in the underlying litigation. Neither the trial court nor this court found that their arguments were frivolous or made in bad faith. Even in their opening brief in this appeal, appellants do not contend that respondents' position was so unreasonable as to preclude fees for related work. In their reply brief, appellants conclusorily assert that respondents "pursued their own interests of controlling the trust" and that "[t]heir actions were not objectively reasonable." By failing to develop the argument and to include it in their opening brief, appellants have forfeited any contention in this regard. (*People v. Tully, supra*, 54 Cal.4th at p. 1075; *Sviridov v. City of San Diego* (2017) 14 Cal.App.5th 514, 521.)

In support of their position that respondents were not entitled to use trust funds to conduct the litigation, appellants cite three cases: *Whittlesey, supra,* 104 Cal.App.4th 1221, *Terry, supra*, 131 Cal.App.4th 1445, and *Zahnleuter v. Mueller* (2023) 88 Cal.App.5th 1294. These cases are unhelpful to appellants' position because none of them involved a trust provision granting the trustee broad authority to conduct litigation at trust expense. (*Whittlesey,* at pp. 1224–1225 [no special authorization]; *Terry,* at pp. 1449–1453 [no special authorization]; *Zahnleuter*, at pp. 1298, 1309 [authorization to conduct litigation expressly excluded litigation at issue].) Appellants contend their petition did not contest or attack the trust. But the trust's terms did not restrict the trustees to defending against a contest or other attack. Instead, they authorized them to commence or defend litigation they "deemed advisable." Accordingly, the trial court did not abuse its discretion in authorizing the payment of attorney fees from the trust estate.

II.

ADMISSION OF FEE SCHEDULE

Appellants argue that the trial court's approval of the payment of trustee commissions for Andy rested on inadmissible evidence. They contend Wells Fargo's fee schedule should have been excluded as inadmissible hearsay. "We review a trial court's ruling on a hearsay objection for an abuse of discretion. [Citations.] However, to the extent a hearsay ruling turns on a question of law, . . . we review the question de novo. [Citations.]" (*People v. Portillo* (2023) 91 Cal.App.5th 577, 588–589 (*Portillo*).)

We conclude the fee schedule was not hearsay. "'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "In other words, 'a hearsay

9

statement is one in which a person makes a factual assertion out of court and the proponent seeks to rely on the statement to prove that assertion is true.' [Citation.]" (*Doe v. SoftwareONE Inc.* (2022) 85 Cal.App.5th 98, 108.)

The fee schedule was not admitted for the truth of the matter asserted—that this was what Wells Fargo generally charged. Instead, Andy relied on the schedule to prove an offer by Wells Fargo to provide trustee services for the trust at the listed prices. Indeed, in reference to the bank's flat fee under the schedule, Andy confirmed at trial that "Wells Fargo [wa]s telling [him,] we are going to charge you a flat fee of $540,000." Evidence of a merchant's offer to sell a product or provide a service for a certain price is admissible as circumstantial evidence of the fair market price of the product or service. (*Portillo, supra*, 91 Cal.App.5th at pp. 605–607 (conc. opn. of Segal, J.) [evidence of retailer's price listings was admissible nonhearsay when used to prove fair market price].)[9]

Appellants assert that *Portillo* is distinguishable because it concerned the fair market value of stolen goods "and did not concern a bank's trustee fee schedule for the sale of real property, as evidence of what a trustee can charge for trustee fees." We see no meaningful distinction. As in *Portillo*, evidence of the merchant's offer here was relevant to establish the fair market price of the product or service at issue. And the fair market price of trustee services in facilitating the sale of real property was relevant to

---

[9] In *Portillo*, the majority opinion concluded that evidence of price listings or price tags was admissible nonhearsay for other reasons. (*Portillo, supra*, 91 Cal.App.5th at pp. 592–593.) Because we agree with the analysis in Justice Segal's concurrence, we need not consider the *Portillo* majority's alternative analysis.

establish whether Andy's fees were reasonable and appropriate.[10] Accordingly, we find no error in the admission of the fee schedule.

## DISPOSITION

The trial court's orders are affirmed. Respondents are awarded their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.

---

[10] Presumably, this is why appellants impliedly conceded that the fee schedule—if admissible—was sufficient to support the approval of Andy's fees.