Filed 2/9/23; Certified for Publication 3/7/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| KATHERINE ZAHNLEUTER, | C093909 |
| Plaintiff and Respondent, | (Super. Ct. No. CU19083601) |
| v. | |
| THOMAS MUELLER, as Trustee, etc., | |
| Defendant and Appellant. | |

This appeal concerns a dispute related to a family trust. The successor trustee named in the third amendment to the trust appeals from the order surcharging him for the trust assets he expended to defend against a beneficiary's contest to the validity of that amendment. Finding no error, we shall affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

*The Family*

Richard J. Mueller and his wife, Joan R. Mueller (collectively, settlors), had two children together: plaintiff Katherine Zahnleuter (formerly Mueller) and Amy Mueller.[1] Richard also had a daughter from a previous marriage, Julie Van Patter. Defendant Thomas Mueller is Richard's brother, and Katherine and Amy's uncle. Thomas has two children: Sudha Mueller and Puja Mueller.

*Establishment of the Trust*

In August 2004, the settlors created the Richard J. & Joan R. Mueller Living Trust. Under the terms of that document, Katherine and Amy were equal residual beneficiaries of the trust estate after the payment of certain expenses and gifts, including a $10,000 gift to their half-sister, Julie. Amy and then Katherine were named as the successor trustees upon the death of both settlors.

The trust document authorized the trustee, in his or her discretion, to initiate or defend, at the expense of the trust estate, any litigation the trustee considered advisable related to the trust or any property of the trust. The trust document also authorized the trustee to employ, at the expense of the trust estate, agents (e.g., attorney, accountant) to assist in the administration of the trust.

The trust document included a no contest clause.[2] It provided, in relevant part, as follows:

---

[1] Because several of the people referenced in this opinion share the same last name, we refer to each person by their first name after the first reference for clarity.

[2] A no contest clause is statutorily defined as "a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary for filing a pleading in any court." (Prob. Code, § 21310, subd. (c); see *Donkin v. Donkin* (2013) 58 Cal.4th 412, 422 [a no contest clause " 'essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the

2

"If any beneficiary under a Trust created by this document shall . . . contest in any court the validity of any Trust created by this document, . . . or shall seek to obtain an adjudication in any proceeding in any court that this Trust or any of its dispositive provisions are void, or otherwise seek to void, nullify, or set aside the Trust or any of its provision, then the right of that person to take any interest given to him or her by this document shall be determined as it would have been determined had the person predeceased the execution of this declaration of Trust.

"The Trustee is authorized to defend, at the expense of the Trust Estate, any contest or other attack of any nature on this Trust or any of its provision. *This paragraph shall not apply to any amendment of this document . . . executed after the date of this document*." (Italics added.)

*The First Amendment to the Trust*

In November 2005, the settlors executed a first amendment to the trust, which did not modify the succession of trustees, the distributive terms of the trust, or the language of the no contest clause.

*Joan's Death and the Second Amendment to the Trust*

In October 2017, Joan died. Two months later, Richard was diagnosed with terminal cancer.

Shortly thereafter, in late December 2017, Richard executed a second amendment to the trust. The primary purpose of this amendment was to name Amy and Katherine as successor co-trustees. The amendment did not modify the distributive terms of the trust or the language of the no contest clause in the trust document. Although the second

---

beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument' "].) A "direct contest" includes a pleading filed by a beneficiary that alleges the invalidity of a trust document, or one or more of the terms of such a document, based on certain grounds, including lack of due execution or undue influence. (Prob. Code, § 21310, subd. (b).)

amendment included a separate no contest clause, this clause only applied to beneficiaries who sought to contest the validity of that amendment. The clause did not authorize the trustee to defend, at the expense of the trust estate, any contest to the amendment.

*The Third Amendment to the Trust*

In early 2018, Amy moved into the family home to care for Richard. In April 2018, Amy e-mailed a handwritten letter to an attorney, Gabriel Lenhart. This letter, written by Amy, purported to express Richard's "final wishes based on Katie's behavior and treatment toward himself and the family."[3] The letter outlined several specific changes Richard wanted to make to the terms of the trust.

The next day, Lenhart e-mailed Amy a copy of the third amendment to the trust. Of relevance here, the amendment named Richard's brother, Thomas, as successor trustee, and provided that Thomas's daughters, Sudha and Puja, would each receive a $10,000 gift from the trust estate. The amendment also provided that Amy's caregiving services would be reimbursed from the trust estate without any impact on her inheritance, and that Amy would receive a life estate in the family home (which was the most valuable asset of the trust), but would be required to *personally* pay for maintenance, insurance, taxes, and mortgage payments associated with her life estate. The amendment further provided that the residue of the estate would be divided equally among Amy, Katherine, *and Julie*. This modification to the trust was not one of the changes set forth in Amy's letter. The household expense provision was also inconsistent with Amy's letter, which provided that $100,000 would be set aside in an account under her name to pay "all related household expenses, mortgage insurance and taxes."

---

[3] Although not relevant to the resolution of this appeal, we note there is evidence in the record that Richard wanted to modify the terms of the trust after he and Katherine got into an argument about her inheritance following Joan's death.

4

The third amendment included a separate no contest clause, which was identical to the no contest clause in the second amendment. Both clauses only applied to beneficiaries challenging that amendment and *did not* authorize the trustee to defend, at the expense of the trust estate, any contest to the amendment. Nor did the third amendment modify the language of the trust document, which, as noted, explicitly *did not* authorize the trustee to defend, at the expense of the trust estate, any contest to an amendment to the trust. Richard purportedly executed the third amendment about an hour after Lenhart e-mailed the document to Amy.

Less than a week later, Lenhart e-mailed Amy a different or second version of the third amendment. This version differed from the first version in several respects. First, it provided that *Julie* would receive a $10,000 gift from the trust estate. Second, it *did not* name Julie as a beneficiary of the residue of the trust estate. Third, it *did not* require Amy to personally pay certain expenses associated with her life estate in the family home (i.e., maintenance, insurance, taxes, and mortgage payments). Instead, consistent with Amy's letter, the amendment provided that $100,000 would be set aside by the trustee to pay for such expenses while Amy resided in the family home. In all other relevant respects, the second version of the third amendment was identical to the first version of the amendment, including the language of the no contest clause.

*Richard's Death and the Petition to Invalidate the Third Amendment to the Trust*

In August 2018, Richard died. Three days later, Thomas gave Katherine a copy of the second version of the third amendment.

In November 2018, Katherine filed a petition to invalidate the third amendment, asserting that Thomas failed to comply with the execution and delivery requirements set forth in the trust document. In January 2019, Katherine amended her petition to assert that the third amendment was invalid because it was the product of undue influence.

5

In February 2019, Thomas, acting as the successor trustee under the terms of the third amendment, filed an opposition to Katherine's amended petition. Thereafter, Katherine and Thomas filed cross motions for summary adjudication on the issue of whether the third amendment had been validly executed pursuant to the terms of the trust document. In January 2020, the trial court ruled in favor of Thomas.

*Katherine's Petition to Compel an Accounting and to Surcharge the Trustee*

Meanwhile, in November 2019, Katherine requested an accounting of the trust. Thomas did not respond. In January 2020, Katherine reiterated her request for an accounting. Thomas, again, did not respond.

In April 2020, Katherine filed a petition to compel an accounting and to surcharge the trustee (i.e., Thomas) for the trust assets he expended to defend her contest to the validity of the third amendment.

*Bench Trial on the Third Amendment to the Trust*

In June 2020, a bench trial commenced on the issue of whether the third amendment to the trust was invalid on the basis that it was the product of undue influence. Upon questioning at trial, Lenhart conceded that there were two versions of the third amendment, and that the terms of the second version (i.e., the challenged version) were materially different than the terms of the first version, including a term that provided that Julie would not share the residue of the trust estate with Amy and Katherine. Lenhart acknowledged that there were "extra carriage returns" added to the second version, and did not dispute that these carriage returns resulted in the pages and clauses from that version to match the pages and clauses of the first version, such that the signature pages of the two versions "line[d] up." Lenhart also acknowledged that the metadata from the Microsoft Word document used to create the third amendment showed that the document was last saved five days after the first version was purportedly signed by Richard. Thereafter, the trial court directed Lenhart to submit a declaration containing

6

his e-mail exchange with Amy about the third amendment as well as both versions of that amendment.

At the outset of the proceedings the following day, Thomas and Amy's counsel asked the trial court to declare a mistrial or continue the matter. In support of this request, counsel stated, "We have a suspicion of fraud on the Court . . . by Mr. Lenhart," and "we can't continue at this point" because "[w]e cannot advocate for a document that was the product[] of fraud." Counsel explained that there was "no reason to trust" that Lenhart did not modify the third amendment after Richard signed it. Counsel claimed that he was not aware of "this problem," adding that "never in a million years would [he] think that an officer of th[e] Court would take a signed and executed document, modify it and send it back to the client in a modified form." In response, the court suspended the proceedings until further notice.

Around a week later, the trial court issued a written order suspending the trial pursuant to the parties' mutual request. In so doing, the trial court explained: "During the testimony [at trial], it became apparent that the version of the challenged Third Amendment [i.e., the second version] . . . might not be th[e] actual Third Amendment executed by the Trustor Richard Mueller, and that the version of the Third Amendment [i.e., the first version] . . . might instead be the version that was executed by Trustor Richard Mueller." The court did not remove Thomas as the trustee, but ordered him not to make any expenditures from the trust estate, unless he was authorized to do so by court order or by stipulation of all potential trust beneficiaries. The court directed Thomas to expend up to $1,500 from the trust estate to provide Julie notice that she was a potential beneficiary under the terms of the third amendment.

*Amy's Petition to Invalidate the Third Amendment to the Trust*

The next day, Amy filed a petition to invalidate both versions of the third amendment for lack of due execution. In support of her petition, Amy asserted that the first version of the amendment did not reflect Richard's "final testamentary wishes," and

7

that, while the second version did in fact reflect Richard's wishes, he did not sign that version of the amendment. According to Amy, Richard never intended for Julie to share the residue of the trust estate with her and Katherine as provided in the first version of the amendment, and that Lenhart modified the first version of the amendment without her or Richard's knowledge. In addition to an order invalidating both versions of the third amendment, Amy also sought an order dismissing Katherine's amended petition to invalidate the third amendment as moot, removing both Amy and Katherine as co-trustees and replacing them with a fiduciary appointed by the court, and approving the validity of the trust, as modified by the first and second amendments.

In August 2020, the trial court granted Amy's request to invalidate both versions of the third amendment due to lack of proper execution. In so ruling, the court noted that both Amy and Katherine agreed that neither version of the third amendment was properly executed by Richard, and that neither Thomas nor any of the other purported beneficiaries under the third amendment (i.e., Thomas's children, Julie) objected to Amy's petition. The court also found that the trust, as amended by the first and second amendments, was valid and enforceable and appointed a private fiduciary as successor trustee.

*Accounting*

In August 2020, the trial court issued an order granting Katherine's petition to compel an accounting of the trust, and deferred ruling on her request to surcharge the trustee (i.e., Thomas) for the trust assets he expended in defending against her contest to the validity of the third amendment.

In September 2020, Thomas filed an accounting and a first corrected accounting, both of which indicated that he expended $201,164.15 on attorney fees from November 15, 2018 to May 11, 2020. The first corrected accounting provided the date the fees were paid, the payee, and the amount paid. However, the accounting did not

8

include any information regarding the specific services that were performed for the fees incurred.

*Ruling on Katherine's Petition to Surcharge the Trustee*

In February 2021, the trial court granted Katherine's petition to surcharge the trustee, ordering Thomas to pay the full amount of trust assets he expended on attorney fees--$201,164.15. The court found the express terms of the trust authorized the trustee to defend, at the expense of the trust estate, "any contest or other attack of any nature on th[e] Trust or any of its provisions," but *not* "any *amendment*" to the trust. (Italics added.) The court concluded that neither the trust document nor the first or second amendment to the trust authorized Thomas to expend trust assets to defend against a contest to the third amendment. Further, the court found Thomas breached his duty to deal impartially with all beneficiaries, as he did not take a neutral position in the dispute over the validity of the third amendment. Instead, he represented the interests of one side (Amy and others) over the other side (Katherine).

*Appeal*

Thomas timely appealed. On September 7, 2022, we granted respondent's motion for calendar preference. The case was fully briefed in October 2022, and assigned to the current panel on October 31, 2022. The parties did not request argument and the case was submitted on January 23, 2023.

## DISCUSSION

### I

*Surcharge Order*

Thomas contends the surcharge order must be reversed because he properly expended trust assets to defend against Katherine's contest to the validity of the third amendment. We disagree.

9

A.  *Applicable Legal Principles and Standard of Review*

"On acceptance of the trust, the trustee has a duty to administer the trust according to the trust instrument and, except to the extent the trust instrument provides otherwise, according to this division." (Prob. Code, § 16000.)[4]  Under the Probate Code, a trustee is entitled to reimbursement by the trust for "[e]xpenditures that were properly incurred in the administration of the trust," and "[t]o the extent that they benefitted the trust, expenditures that were not properly incurred in the administration of the trust." (§ 15684, subds. (a), (b).)

"[A]mong the ordinary powers and duties of a trustee of a private trust are those of doing all acts necessary and expedient to collect, conserve and protect the property of the trust, to maintain and defend the integrity of the trust for the benefit of the beneficiaries and to employ such assistants as may be necessary for said purposes." (*Evans v. Superior Court* (1939) 14 Cal.2d 563, 574.)  "[W]here litigation is necessary for the preservation of the trust, it is both the right and duty of the trustee to employ counsel in the prosecution or defense thereof, and the trustee is entitled to reimbursement for his expenditures out of the trust fund." (*Metzenbaum v. Metzenbaum* (1953) 115 Cal.App.2d 395, 399.)  "If the trustee acts in good faith, he has the power to employ such assistants and to compensate such assistants out of the assets of the trust even though he may not ultimately succeed in establishing the position taken by him as such trustee." (*Evans v. Superior Court, supra*, 14 Cal.2d at p. 574.)

"The foregoing rules, of course, presuppose that the litigation was for the benefit of the trust estate. [Citation.]  For example, the defense of a lawsuit that has the potential for depleting trust assets would be for the benefit of the trust, justifying the employment of counsel.  However, litigation seeking to remove or surcharge a trustee for

---

[4]  Further undesignated statutory references are to the Probate Code.

mismanagement of trust assets would not warrant the trustee to hire counsel at the expense of the trust. Such litigation would be for the benefit of the trustee, not the trust." (*Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1227 (*Whittlesey*).)

When a trust has two or more beneficiaries, "the trustee has a duty to deal impartially with them and shall act impartially in investing and managing the trust property, taking into account any differing interests of the beneficiaries." (§ 16003.)

In litigation concerning the trust, the duty of the trustee and its counsel is to aid the court in deciding on the correct administration of the trust estate, without regard to conflicting interests of beneficiaries. (*In re Gartenlaub's Estate* (1921) 185 Cal. 648, 655.) "[W]hen a dispute arises as to who is the rightful beneficiary under a trust, involving no attack upon the validity or assets of the trust itself, the trustee ordinarily must remain impartial, and may not use trust assets to defend the claim of one party against the other." (*Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 537 (*Doolittle*).) However, a trustee may defend against a contest by a beneficiary, even if the beneficiary's contest will have no other effect on the trust except for modifying the dispositive provisions for the trust estate, when the authority granted by the trust document directs the trustee to defend against any contest brought by a beneficiary. (*Id.* at pp. 537-538, 544; see *Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1208 [a trustee is bound to deal impartially with all beneficiaries, unless the trust document provides otherwise; if the terms of the trust give the trustee discretion to favor one beneficiary over the other, the court will not " 'control the exercise of such discretion, except to prevent the trustee from abusing it' "].)

We review the trial court's decision to disallow the payment of litigation expenses out of the trust estate for an abuse of discretion. (*Whittlesey, supra,* 104 Cal.App.4th at p. 1230.) " 'The underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and a service to the trust.' [Citation.] Consequently, where the trust is not

benefited by litigation, or did not stand to be benefited if the trustee had succeeded, there is no basis for the recovery of expenses out of the trust assets." (*Ibid*.)

"In construing trust instruments, as in the construction and interpretation of all documents, the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker." (*Estate of Gump* (1940) 16 Cal.2d 535, 548.) "[I]f the court can ascertain the testator's intent from the words actually used in the instrument, the inquiry ends. [Citation.] ' "Where the terms of [the instrument] are free from ambiguity, the language used must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained thereby." ' " (*Trolan v. Trolan* (2019) 31 Cal.App.5th 939, 949 (*Trolan*).) The proper interpretation of a trust instrument is a question of law subject to independent review, " 'unless interpretation turns on the credibility of extrinsic evidence or a conflict therein.' " (*Doolittle, supra,* 241 Cal.App.4th at pp. 539-540.)

B. *Analysis*

As we next explain, Thomas's claim that he properly expended trust assets to defend against Katherine's contest to the validity of the third amendment is foreclosed by *Whittlesey, supra*, 104 Cal.App.4th 1221 and *Terry v. Conlan* (2005) 131 Cal.App.4th 1445 (*Conlan*).

In *Whittlesey*, a trust was created that named the decedent's niece (Joyce) as the trustee and primary beneficiary of the trust. (*Whittlesey*, *supra*, 104 Cal.App.4th at pp. 1224, 1228.) Later, an amendment to the trust was executed that named the decedent's second wife (Margaret) as the trustee and made Margaret and her son the primary beneficiaries of the trust. (*Ibid*.) Joyce challenged the validity of the amendment, which was executed shortly before decedent's death. (*Id*. at pp. 1224-1225.) After Margaret died, the successor trustee retained the attorney hired by Margaret to defend the amendment. (*Id*. at pp. 1225, 1228.) Following a bench trial, the amendment was invalidated on the basis that it was the product of undue influence, and the trial court

denied the trustee's request for reimbursement of attorney fees and costs incurred in defending the amendment. (*Id*. at p. 1225.) On appeal, a panel from this court affirmed the denial of reimbursement, reasoning, "where the trust is not benefited by litigation, or did not stand to be benefited if the trustee had succeeded, there is no basis for the recovery of expenses out of the trust assets." (*Id*. at p. 1230.)

The *Whittlesey* court explained that it would be inequitable to use trust assets to defend against Joyce's undue influence claim against Margaret because, if Joyce prevailed, she "would be required to finance her own trust litigation and that of her opponent, despite the fact she prevailed." (*Whittlesey*, *supra*, 104 Cal.App.4th at p. 1230.) In rejecting the claim that reimbursement was proper because the trustee acted in accordance with his fiduciary duties, as he had subjective good faith and made an objectively reasonable decision to participate in the litigation given the facts and circumstances, the *Whittlesey* court stated: "[T]he existence of facts that would have led the trustee to believe the trust amendment was valid does not establish the objective reasonableness of the trustee's defense of the trust amendment. While it would not have been proper for the trustee to have allowed a default in the litigation, there was no basis for the trustee to have taken other than a neutral position in the contest . . . . [T]he parties primarily interested in the outcome of the litigation were [Joyce] on the one hand and [Margaret] on the other. To the extent [the trustee's attorney] defended the amendment, he was representing the interests of one side of the dispute over the other, not representing the interests of the trust or the trustee." (*Id.* at pp. 1230-1231.) The *Whittlesey* court observed that, to the extent the trustee represents the interests of one side of the contest over the other, the trustee must look to the parties who stand to gain from the litigation for reimbursement, not the trust. (*Id*. at p. 1231.)

In *Terry*, the appellate court approved of and followed *Whittlesey*. There, the dispute was over the validity of two competing trust documents. (*Terry, supra,* 131 Cal.App.4th at p. 1448.) The parties to the dispute were decedent's widow (Ione) and his

13

three children from a previous marriage.  (*Ibid.*)  The first trust document, which Ione claimed was valid, left all of decedent's community property to Ione.  (*Ibid.*)  The second trust document, which was drafted shortly before decedent died, left all of decedent's property to his children.  (*Ibid.*)  The appellate court held that the trustee named in the second trust document, who was one of decedent's children and a named beneficiary in that document, was not permitted to recover attorney fees incurred in defending against Ione's challenge to the document.  (See *Terry, supra,* 131 Cal.App.4th at pp. 1462-1464.)  In so holding, the *Terry* court explained that the trustee "has not participated in this litigation as a neutral trustee to defend the trust and protect its assets; rather, she has consistently pursued her own interests and those of her siblings [beneficiaries under the second trust document], to the detriment of [the beneficiary under the first trust document].  As such, she must bear her own costs in this litigation, rather than be reimbursed from the trust."  (*Id.* at p. 1464.)

In *Whittlesey* and *Terry*, as here, the essence of the underlying action was not a challenge to the existence of the trust; rather, it was a dispute over who would control and benefit from it.  Regardless of whether Katherine's petition contesting the validity of the third amendment was successful, the trust would remain intact.  The challenged version of the third amendment--its second version--named Thomas as the successor trustee, and modified the terms of the trust to provide that Thomas's two daughters and Julie would each receive a $10,000 gift from the trust estate, that Amy's caregiving services would be reimbursed from the trust estate without any impact on her inheritance, and that Amy would receive a life estate in the family home, with up to $100,000 for homeowner-related expenses to be paid from the trust estate.  Thomas opposed Katherine's contest to the third amendment.  To the extent Thomas incurred attorney fees in doing so, he, in effect, sought to benefit the interests of his two children, Julie, and Amy, not the interests of the trust estate.  (See *Whittlesey, supra*, 104 Cal.App.4th at p. 1231.)  A trustee is *not* entitled to reimbursement of litigation expenses from the trust estate when, as here, "[t]he

14

dispute was, and continues to be, over who will enjoy the benefits and who will control the trust." (*Terry, supra,* 131 Cal.App.4th at p. 1462; see also *Whittlesey*, at p. 1231.)

The record makes clear that Thomas did not participate in the litigation as a neutral trustee to defend the trust and protect its assets. Instead, he pursued the interests of others, including his two daughters, to the detriment of Katherine. As a consequence, he must bear his own litigation costs, rather than be reimbursed from the trust estate. (*Terry, supra,* 131 Cal.App.4th at p. 1464.) Indeed, requiring the trust estate to pay for the attorney fees incurred by Thomas in defending the third amendment would be inequitable, as it would require Katherine to pay her own litigation costs plus the litigation costs incurred by Thomas. (See *Whittlesey, supra*, 104 Cal.App.4th at p. 1230.) Accordingly, we conclude the trial court did not abuse its discretion in surcharging Thomas for the trust assets he expended to defend the third amendment.

We find no merit in Thomas's contention that *Whittlesey* and *Terry* are inapposite because he did not have a beneficial interest in the trust and was not seeking to advance his own interests at the expense of other trust beneficiaries by defending the third amendment. The outcome in *Whittlesey* and *Terry* did not turn on the trustee having a beneficial interest in the trust and taking a position that advanced their own interests over the interests of other beneficiaries. Rather, the dispositive issue in those cases was that the trustee did not participate in the litigation as a neutral party to defend the trust and protect its assets. Relying on authority addressing when a trustee may obtain reimbursement of litigation costs from the trust estate, both the *Whittlesey* and *Terry* courts focused on whether the litigation at issue provided a benefit and service to the trust. (*Whittlesey*, *supra*, 104 Cal.App.4th at pp. 1226-1227, 1230-1231; *Terry, supra*, 131 Cal.App.4th at pp. 1461-1464.) Both courts concluded that the trustee was not entitled to reimbursement of litigation costs from the trust estate because they were

15

representing one side of the dispute over the other, not the interests of the trust. (*Whittlesey*, at pp. 1230-1231; *Terry*, at pp. 1462-1464.)[5]

Thomas's reliance on *Doolittle* is misplaced. There, a trust provision specifically *directed* the trustee to defend, at the expense of the trust estate, any contest to the trust, including any *amendment* to the trust. (*Doolittle*, *supra*, 241 Cal.App.4th at p. 534.) The *Doolittle* court acknowledged that *Whittlesey* and *Terry* remain good law, but distinguished them on the basis that the trust documents in those cases did not contain an explicit directive to the trustee to defend, at the expense of the trust estate, any contest to the validity of an amendment to the trust. (*Id.* at p. 538.) The *Doolittle* court noted that "authoritative form books" recommend such a directive to avoid the application of the holding in *Whittlesey.* (*Ibid.*) Here, by contrast, the trust document did not direct the trustee to defend against a contest to any amendment to the trust. Rather, as noted *ante*, the language of the trust document explicitly *did not* authorize the trustee to do so. In relevant part, the trust document states: "The Trustee is authorized to defend, at the expense of the Trust Estate, any contest or other attack of any nature on this Trust or any of its provision. *This paragraph shall not apply to any amendment of this document . . .*

---

[5] We reject Thomas's contention that he properly expended trust assets to defend the third amendment because he subjectively believed that the expenditure of such assets was necessary and appropriate to carry out the purpose of the trust and his belief was objectively reasonable. Thomas forfeited this claim by failing to raise it in the trial court. (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 (*Ochoa*) ["It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal."].) In any event, the claim has no merit. A similar argument was rejected in *Whittlesey*. There, the court assumed the soundness of the legal theory advanced, but concluded that "the existence of facts that would have led the trustee to believe the trust amendment was valid does not establish the objective reasonableness of the trustee's defense of the trust amendment." (*Whittlesey, supra*, 104 Cal.App.4th at pp. 1230, 1231 [concluding that "there was no basis for the trustee to have taken other than a neutral position in the contest" of the trust amendment, as expending attorney fees to defend the amendment would result in the trustee representing the interests of one side of the dispute over the other, not the interests of the trust].)

*executed after the date of this document.*" (Italics added.) Neither version of the third amendment directed or authorized the trustee to defend against a contest to the amendment. In short, because *Doolittle* is clearly distinguishable, it does not assist Thomas. Under the circumstances presented, Thomas's duty to deal impartiality with beneficiaries required him to stay neutral in the litigation over the validity of the third amendment, as there was no language in the trust document or in any of the amendments to the trust providing otherwise--that is, language directing or authorizing him to favor one beneficiary (Amy) over another (Katherine). (See *Doolittle, supra*, 241 Cal.App.4th at p. 537 ["[u]nless the language of a trust provides otherwise, a trustee is bound to deal impartially with all beneficiaries"]; *Hearst v. Ganzi, supra*, 145 Cal.App.4th at p. 1208 [same].)[6]

Finally, we reject Thomas's contention that the no contest clause in the third amendment should be construed as directing (i.e., requiring) the trustee to defend against any contest to that amendment. As Thomas acknowledges, the clause (which appears in both versions of the third amendment and contains identical language) does not include express language supporting such an interpretation. The text of the clause is not ambiguous, and it neither directs nor authorizes the trustee to defend the third amendment at the expense of the trust estate. Indeed, the clause only applies to contests by beneficiaries, and it makes no mention of any duty or obligation on the part of the trustee

---

[6] We are unpersuaded by Thomas's assertion that he did not "litigate a single issue, motivated by bias against . . . Katherine." During his deposition, Thomas referred to Katherine as a "greedy, manipulative, deceiving individual," and claimed that, after Richard's death, Amy took "precedence" over Katherine. Thomas admitted that his defense of the third amendment, if successful, would benefit Amy and harm Katherine, and that he was more concerned about Amy than Katherine. Thomas also conceded that he did not treat the beneficiaries equally. He explained that he distributed $135,000 from the trust estate to Amy as well as $10,000 each to Julie and his two daughters, but he refused to distribute the $100,000 he was "supposed to give Kate" because of the "golden rule"--"[h]e who has the gold rules."

to defend against such contests.  Further, there is nothing in either version of the third amendment indicating an intent on the part of Richard to modify the language of the trust document, which (as noted *ante*) explicitly *did not* authorize the trustee to defend, at the expense of the trust estate, any contest to an amendment of the trust.  In short, because there is no ambiguity in the relevant language of the no contest clause in the third amendment, the plain meaning controls.  (*Trolan, supra,* 31 Cal.App.5th at p. 949.)[7]

## II

### *Remaining Contentions*

Thomas contends the trial court erred in surcharging the entire amount of the trust assets he expended on attorney fees because some of those fees were properly incurred.  In support of his position, Thomas points to three possible sources of "legitimately incurred" fees.  As we next explain, we are unpersuaded.

First, Thomas points to the $1,500 the trial court authorized him to expend from the trust estate to provide Julie notice that she was potentially a beneficiary under the terms of the third amendment.  But Thomas does not cite anything in the record showing that he expended any trust assets for this purpose.  And, in any event, the record reflects that the surcharge order did not include any trust assets that were expended to give Julie

---

[7] Without citation to the record, Thomas asserts that the record includes evidence--a letter from Richard to Katherine and oral representations Richard made to Thomas-- showing that Richard intended Thomas, as the successor trustee, to defend the third amendment against any contest brought by Katherine.  Later in his opening brief, Thomas suggests that Richard's oral representations to Thomas amounted to extrinsic evidence offered to interpret the no contest clause in the third amendment.  Thomas forfeited this argument by failing to raise it in the trial court.  (*Ochoa, supra,* 61 Cal.App.4th at p. 1488, fn. 3.)  In any event, the argument has no merit.  Because the language of the no contest clause is not ambiguous, no extrinsic evidence was necessary to interpret it. (*Trolan, supra,* 31 Cal.App.5th at p. 949.)  Further, the "extrinsic evidence" relied on by Thomas does not show it was Richard's intent that Thomas defend any contest to the third amendment brought by Katherine.  The evidence Thomas points to makes no mention of an obligation or duty on the part of Thomas to defend the third amendment.

notice. The trial court entered its order authorizing the $1,500 expenditure on June 24, 2020, and the attorney fees subject to surcharge only included fees incurred from November 15, 2018 to June 11, 2020.

Second, Thomas points to probate code provisions providing that a trustee is entitled to reimbursement for expenditures that were properly incurred in the administration of a trust (§ 15684), and that a trustee has the power to hire and pay attorneys to assist in the administration of a trust (§§ 16247, 16243). Thomas, however, never claimed in the trial court that he incurred any attorney fees related to the administration of the trust, and therefore he has forfeited this argument. (*Ochoa, supra,* 61 Cal.App.4th at p. 1488, fn. 3.) Moreover, even if we were to overlook forfeiture, Thomas's accounting failed to include any information about the specific services provided for the attorney fees incurred. Each line of the accounting simply states the name of the attorney or law firm and "Attorney Fees," "Retainer," or "Attorney Fees-Forensic." Nothing in the accounting shows that any attorney fees were incurred in connection with the administration of the trust. It is well settled that a trustee bears the burden "to prove that charges made by [him or her] are proper." (*Purdy v. Johnson* (1917) 174 Cal. 521, 530; see also *Estate of McCabe* (1950) 98 Cal.App.2d 503, 505 ["Trustees are . . . under the duty to prove every item of their account by 'satisfactory evidence'; the burden of proof is on them and not on the beneficiary; and any doubt arising from their failure to keep proper records, or from the nature of the proof they produce, must be resolved against them."].) Where a trustee negligently fails to keep true accounts, "all presumptions will be against the trustee." (*Purdy*, at p. 527.) Although Thomas claims that a portion of the surcharged attorney fees must have been incurred in administering the trust estate, he has not directed us to anything in the record demonstrating as much. And our independent review of the record reveals no documentation of any such expenses (e.g., billings, invoices).

19

Third, Thomas argues that the trial court improperly surcharged him for the attorney fees incurred in connection with his successful defense of the third amendment. While it is true that the trial court found in favor of Thomas with respect to Katherine's claim that the third amendment was not properly executed and delivered, Thomas did not (as we have explained) participate in the underlying litigation as a neutral trustee to defend the trust and protect its assets for the benefit of the trust. Instead, he pursued the interests of others, including his two daughters, to the detriment of Katherine. As a consequence, he must bear his own litigation costs, rather than be reimbursed from the trust estate. (*Terry, supra,* 131 Cal.App.4th at p. 1464; see also *Whittlesey, supra*, 104 Cal.App.4th at pp. 1227, 1230 [attorney fees are only chargeable to the trust when they benefit the trust]; see also *Butler v. LeBouef* (2016) 248 Cal.App.4th 198, 213 [same]; *Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 273 [same].)[8]

---

[8] We reject Thomas's attempt to recast his defense of the third amendment as a valid defense against a petition to remove him as trustee. Thomas forfeited this issue by failing to raise it in the trial court and in his opening brief on appeal. (*Ochoa, supra,* 61 Cal.App.4th at p. 1488, fn. 3 [failure to raise argument in the trial court]; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 [failure to raise argument in opening brief on appeal].) In any event, Thomas has not shown error. Thomas was named as the successor trustee in the third amendment, and Katherine's petition to invalidate that amendment was based on two grounds: the failure to comply with the execution and delivery requirements in the trust document and undue influence. As such, we fail to see how Katherine's petition to invalidate the third amendment could be construed as a petition to remove Thomas as trustee. (See § 15642, subd. (b) [specifying grounds for removal of a trustee by the court (e.g., breach of trust)].) And Thomas cites no authority supporting such a conclusion. As a consequence, no further discussion of this issue is necessary. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [when a party fails to support a point with reasoned argument and citation to authority, we treat the point as waived].)

20

## DISPOSITION

The surcharge order is affirmed.  Katherine shall recover her costs on appeal.
(Cal. Rules of Court, rule 8.278(a).)


                                            /s/
                                    Duarte, J.



We concur:



      /s/
Robie, Acting P. J.



      /s/
Boulware Eurie, J.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| KATHERINE ZAHNLEUTER, | C093909 |
| Plaintiff and Respondent, | (Super. Ct. No. CU19083601) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| THOMAS MUELLER, as Trustee, etc., | |
| Defendant and Appellant. | |

The opinion in the above-entitled matter filed on February 9, 2023, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.

1

FOR THE COURT:


_____/s/_____
Robie, Acting P. J.



_____/s/_____
Duarte, J.



_____/s/_____
Boulware Eurie, J.

2

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Nevada County, Linda J. Sloven, Judge. Affirmed.

Law Office of Dewey V. Harpainter, Dewey V. Harpainter and Nathan R. Harpainter for Defendant and Appellant.

Downey Brand, Tyson E. Hubbard and Christopher M. Kolkey for Plaintiff and Respondent.