Filed 7/25/24  Koski v. Campbell CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MANIJEH SHEILA KOSKI, as Trustee, etc., <br><br> Cross-complainant and Respondent, <br><br> v. <br><br> SCHUYLER CAMPBELL, <br><br> Cross-defendant and Respondent; <br><br> DINORA FIGUEROA, <br><br> Cross-defendant and Appellant. | H051453 <br> (Santa Cruz County <br> Super. Ct. No. 23PR00091) |

## I.  INTRODUCTION

Kiomars Fiazi created a revocable trust that he amended multiple times.  The last amendment before he died (Second Amendment) omitted his nephew, respondent Schuyler Campbell, and added a friend, appellant Dinora Figueroa.  The Second Amendment also included a provision that "directed" the trustee "to defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions."  Campbell filed a petition challenging the validity of the Second Amendment, which apparently remains pending in the probate court.

Relevant here, respondent Manijeh Sheila Koski, who is Fiazi's sister, the current trustee of his trust, and a beneficiary of the trust, filed a petition for instructions in the probate court, seeking an order requiring her, as trustee, to "remain neutral and file no responsive pleading" to Campbell's petition. Figueroa objected to the petition for instructions, and Campbell filed a response in support of the petition. The court granted the petition for instructions, ordering Koski as trustee to "remain neutral in the litigation" and to "file no responsive pleading" to Campbell's petition.

On appeal, Figueroa contends that, based on the directive in the Second Amendment for the trustee to defend the trust against attack, Koski as trustee was obligated to defend the trust against Campbell's petition challenging the validity of the Second Amendment.

For reasons that we will explain, we will (1) reverse the probate court's order granting Koski's petition for instructions ordering her, as trustee, to "remain neutral in the litigation" and to "file no responsive pleading" to Campbell's petition and (2) direct the court to deny Koski's petition for instructions.

## II. BACKGROUND

### A. *The 2006 Trust and the 2015 Restatement of the Trust*

In 2006, Fiazi created a revocable trust, and in 2015, he restated the trust (Restatement). The Restatement, in Article Eight, provided specific monetary gifts totaling $300,000 to two beneficiaries, with the remainder of the trust estate to be distributed to four beneficiaries, including Koski and two other sisters of Fiazi. Campbell was entitled to a distribution only if one of those other sisters predeceased him.

Article Nine of the Restatement identifies Fiazi as the trustee and his sister Koski as the successor trustee.

Article Ten of the Restatement gives the trustee the general power to defend litigation as follows: "The trustee may, in the trustee's discretion, initiate or defend, at

2

the expense of the trust, any litigation that the trustees [sic] considers advisable relating to the trust or any property of the trust estate."

Article Thirteen contains a no contest clause.[1]  Article Thirteen also gives the trustee the "authori[ty] to defend at the expense of the trust estate any contest, attack or proceeding brought by anyone seeking to void, nullify or set aside any provision of this Trust instrument, or the grantor's will, including any amendments or codicils made hereof."

## B.  *The First Amendment in 2017*

Fiazi executed an amendment to the trust in October 2017 (First Amendment). The amendment changed a portion of Article Eight to provide that after distribution of the specific monetary gifts ($300,000) to two beneficiaries, the remainder of the trust estate would be distributed as follows:

"1.  To GRETA HERNANDEZ, forty percent (40%).

"2.  To MANIJEH ('SHEILA') KOSKI, thirty percent (30%).

"3.  To DAMIAN & SCHUYLER CAMPBELL, ten percent (10%).

"4.  To PARVIN HOSSEINIAN, twenty percent (20%)."

Greta Hernandez was a friend of Fiazi.  Koski and Parvin Hosseinian are Fiazi's sisters.  Damian and Schuyler Campbell are Fiazi's nephews.

## C.  *The Second Amendment in 2020*

Fiazi executed another amendment to the trust (Second Amendment) in September 2020.  This amendment changed the entirety of Article Eight regarding the distribution of the trust estate upon his death.  Among other things, the amendment omitted the specific monetary gifts to two beneficiaries, omitted Campbell as a

---

[1] A "no contest clause in a trust instrument 'essentially acts as a disinheritance device, i.e., if a beneficiary contests or seeks to impair or invalidate the trust instrument or its provisions, the beneficiary will be disinherited and thus may not take the gift or devise provided under the instrument.' [Citation.]" (*Donkin v. Donkin* (2013) 58 Cal.4th 412, 422.)

3

beneficiary, added Figueroa as beneficiary, and changed the percentages that each beneficiary would receive.  Specifically, Fiazi stated in the Second Amendment to Article Eight that the trust estate would be distributed as follows:

"1.  To my friend GRETA HERNANDEZ, twenty-three (23%).

"2.  To my sister MANIJEH ('SHEILA') KOSKI, twenty-two percent (22%).

"3.  To my sister PARVIN HOSSEINIAN, ten percent (10%).

"4.  To my dear friend DINORA FIGUEROA, thirty percent (30%).

"5.  To my dear friends ROGELIO SABORIT and YELENA STASEYVEA,

fifteen percent (15%)."

Fiazi acknowledged in Article Eight of the Second Amendment that questions would arise regarding the amendment.  He stated in Article Eight, "The grantor is aware that certain family members and friends question his actions managing his assets and amending his trust with respect to the persons he has designated as beneficiaries. Nonetheless, the grantor has included these persons as beneficiaries, despite their efforts to interfere.  Grantor intends to exercise his right to dispose of his assets as he so chooses without interference from anyone who disagrees.  Grantor instructs the successor trustee of the trust to carry out his wishes as stated herein and to take all necessary steps to prevent the circumvention of his wishes."

In addition, although Article Thirteen (of the Restatement) already contained a no contest clause, and although Articles Ten and Thirteen already authorized the trustee to defend the trust, the Second Amendment added to Article Eight the following no contest clause and a directive to the trustee to defend the trust:  "If, without probable cause (as defined in California Probate Code §21311(b) or any successor statute), any beneficiary of any trust created by this document, singly or in conjunction with any other person or persons, files a direct contest (as defined in California Probate Code §21310 or any successor statute), that alleges the invalidity of this document or any one or more of its terms or that alleges the invalidity of any will of the grantor or any one or more of its

4

terms, which is in existence on the date this document is executed, then the right of that person to take any interest given to him or her by this document shall be determined as it would have been determined had the person predeceased the execution of this declaration of trust without surviving issue. *The successor trustee is directed to and authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions.* All costs and attorney's fees shall be charged against the share of the contesting beneficiary." (Italics added.)

In a certification and acknowledgment that was contained in the same document as the Second Amendment, Fiazi stated, "I . . . being of sound mind certify the following:

"1. I have given careful thought and consideration and closely read the foregoing Amendment of Trust;

"2. The foregoing Amendment of Trust correctly states the terms and conditions under which my Trust Estate should be held, managed, administered and distributed by the Trustee;

"3. I approve such Amendment and all particulars and I am fully cognizant of the consequences of my actions; and

"4. As the grantor of the Declaration of Trust, I am acting freely, of my own volition, without any undue influence, threats or intimidation by anyone. I am of sound mind and not suffering from any mental or emotional deficiency that would impair my ability to fully understand the consequences of my actions.

"5. If there are persons who disagree with my wishes as stated here, I hereby exercise my right to dispose of my property as I determine and ask that they respect my wishes.

"6. As the trustee named in such Declaration of Trust, I approve and accept the Amendment."

5

**D.** *Campbell's Petition Challenging the Validity of the Second Amendment*

Kiomars Fiazi died in October 2022. In February 2023, Campbell filed a petition under Probate Code section 17200[2] challenging the validity of the Second Amendment. Campbell alleged, among other things, that (1) Fiazi lacked sufficient mental capacity at the time he executed the Second Amendment, and (2) the amendment was the result of undue influence by Figueroa, who Campbell alleged was Fiazi's "caretaker." In June 2023, Campbell filed an amended petition containing similar allegations. In July 2023, Figueroa, represented by counsel, filed a demurrer to the amended petition.

**E.** *Trustee Koski's Petition for Instructions Regarding Administration of the Trust*

**1. Koski's Petition for Instructions**

In the meantime, in May 2023, Koski, the trustee of Fiazi's trust, filed a petition for instructions under section 17200 regarding administration of the trust. In the petition, Koski stated that there was a dispute between Campbell and Figueroa regarding whether the Second Amendment was valid. Koski sought to remain "neutral" in the dispute and not use trust resources. She argued that she should remain neutral (1) because Campbell was only challenging the invalidity of an amendment to the trust and the identity of the beneficiaries, not the existence of the trust itself, and (2) to avoid representing the interests of one side of the dispute (Figueroa) over the other (Campbell). Koski also contended that although the Second Amendment to the trust contained language directing her to defend against a challenge to the validity of the trust and to use trust funds in the defense, she had the "option" whether to do so. She requested that the court instruct her to remain neutral and to file no responsive pleading to Campbell's petition challenging the validity of the Second Amendment. Koski's petition for instructions indicated that the hearing on her petition was scheduled for August 4, 2023.

---

[2] All further statutory references are to the Probate Code.

### 2. Campbell's Response

On July 28, 2023, Campbell filed a response to Koski's petition for instructions, indicating that he supported Koski's request to stay neutral. Among other arguments, Campbell contended that because the Second Amendment altered Koski's share as a beneficiary of the trust, "it would be difficult for her to stay neutral and be impartial if she were to participate in the litigation" regarding the validity of that amendment.

### 3. Figueroa's Objection and Response

On July 31, 2023, Figueroa filed a 14-page objection and response to Koski's petition for instructions. Figueroa requested that Koski, as trustee, be instructed to defend the trust against Campbell's challenge in view of the "express instructions" in the Second Amendment. Figueroa stated that she had been Fiazi's "romantic partner." She contended that Koski had "a personal incentive" to "see . . . Campbell's" petition succeed based on "familial and financial reasons" because Koski is Campbell's aunt, and Koski purportedly would receive a greater percentage under the First Amendment if the Second Amendment was found to be invalid. Figueroa further argued that under the Second Amendment, Campbell was not a beneficiary and therefore Koski as trustee would breach her fiduciary duty if she "prioritize[d] or balance[d] the interests of . . . Campbell with the beneficiaries of the Second Amendment." Instead, Koski was required to administer the trust solely in the interests of the beneficiaries of the Second Amendment. Alternatively, Figueroa argued that even if Campbell was a future or contingent beneficiary, the Second Amendment required Koski "to favor the beneficiaries of the Second Amendment by defending the Second Amendment if contested." Figueroa requested that a neutral trustee be appointed if Koski was unwilling to defend the Second Amendment.

### 4. Koski's Reply

On August 2, 2023, Koski filed a reply in support of her petition for instructions. First, she contended that it was not necessarily the case that she would receive a larger amount under the First Amendment than the Second Amendment. Koski further stated

that she placed her fiduciary obligations "in front of any personal financial responsibilities that she may have." Second, Koski argued that the provision regarding defending the trust was contained in the Second Amendment, the validity of which was at issue. Until the validity of the Second Amendment was resolved, Koski argued that the identity of the beneficiary – Campbell or Figueroa – was "not known and any action . . . Koski takes in this case subjects her to criticism from the party ultimately determined to be a beneficiary." For that reason, she believed that she should "remain neutral and not take any action in this case."

### 5. The Hearing and Order

On August 4, 2023, a hearing was held on Koski's petition for instructions. Counsel for Koski, Campbell, and Figueroa appeared at the hearing. The probate court observed that "a 14-page objection . . . was just filed days ago," an apparent reference to Figueroa's 14-page objection filed on July 31, 2023. After hearing argument from Koski, Campbell, and Figueroa, the probate court granted the petition for instructions to remain neutral and file no responsive pleading to Campbell's petition.

An unsigned minute order regarding the hearing states that "[n]o opposition was filed or presented."

In a signed order filed on August 17, 2023,[3] the probate court indicated that it was granting Koski's petition "[a]fter reviewing the submissions of the parties and hearing oral argument." The court instructed Koski as trustee "to remain neutral in the litigation . . . and file no responsive pleading" to Campbell's petition challenging the validity of the Second Amendment.

---

[3] The parties proceeded by way of an appellant's appendix (Figueroa) and a respondent's appendix (Koski). The August 17, 2023 order was not contained in either appendix. However, the record on appeal contains a "[c]ase [s]ummary," or docket, of the probate court, which refers to the August 17, 2023 order. On our own motion, we augment the record to include the August 17, 2023 order.

8

## III. DISCUSSION

Figueroa contends that, based on the directive in the Second Amendment for the trustee to defend the trust against attack, Koski as trustee was obligated to defend the trust against Campbell's petition challenging the validity of the Second Amendment.

Koski and Campbell contend that the probate court did not err in ordering Koski to remain neutral regarding Campbell's challenge to the Second Amendment. Koski and Campbell also argue that Figueroa has not shown prejudice as a result of the court's order. Campbell further contends that Figueroa does not have standing to maintain this appeal.

We consider the standing issue first before turning to the substance of Figueroa's appeal.

### A. *Figueroa's Standing to Appeal*

Campbell contends that "Figueroa is not aggrieved and lacks standing to appeal." According to Campbell, (1) Figueroa "did not file an objection to [Koski's] petition" for instructions, and (2) Figueroa "has not appealed" the portion of the minute order that states that "[n]o opposition was filed or presented" to Koski's petition.

Campbell's contention that Figueroa lacks standing to appeal is not supported by the record. His argument is based on the false assertion that Figueroa did not object to Koski's petition. First, the record on appeal contains a file-stamped copy of Figueroa's objection to the petition. Second, at the August 4, 2023 hearing on the petition, at which Campbell's counsel was present, the probate court expressly referred to "a 14-page objection" that had been "filed days ago," which could only have been in reference to Figueroa's 14-page objection that was filed on July 31, 2023. Third, at the hearing, Campbell's counsel expressly acknowledged receiving "the opposition" "[t]o the petition for instructions." Fourth, at the hearing, Figueroa's counsel presented argument in opposition to the petition and also repeatedly referred to the written objection. In sum, the record irrefutably establishes that Figueroa opposed Koski's petition both in writing

9

and orally at the hearing, and that Campbell's counsel received the written objection and was present during Figueroa's oral objection. The unsigned minute order is clearly erroneous in stating that "[n]o opposition was filed or presented," and indeed the minute order also omits the fact that counsel for Figueroa was present at the hearing. On this record, we reject Campbell's contention that Figueroa lacks standing to pursue this appeal.

**B.** ***Order Instructing Trustee Koski to Remain Neutral and File No Responsive Pleading***

Figueroa contends that the Second Amendment imposes a duty on Koski, as trustee, to defend against Campbell's petition which seeks to invalidate the Second Amendment. Figueroa argues that this duty to defend continues unless and until the probate court determines that the Second Amendment is invalid.

Koski and Campbell contend that the probate court did not abuse its discretion in determining that Koski should stay neutral and not use trust assets to defend against Campbell's petition. Koski and Campbell also argue that Figueroa has not shown any prejudice from the court's ruling because, according to Koski, Figueroa "is already contesting the Campbell Petition and, if successful, may presumably seek reimbursement from the Trust under the common fund doctrine."

Before considering the substance of the parties' contentions, we set forth (1) a trustee's duties in general, (2) the effect of a directive to defend in a trust instrument, (3) the enforceability of a directive to defend when it is contained in an amendment that is being contested, and (4) the rules for interpreting a trust instrument.

### 1. Trustee's Duties in General

A "trustee has a duty to administer the trust according to the trust instrument . . . ." (§ 16000; accord, *Estate of Goulet* (1995) 10 Cal.4th 1074, 1080, fn. 4 [trustee has a " 'duty . . . to carry out the terms of the trust according to the expressed intent of the trustor' "].) "Included in this duty is the requirement that the trustee has a duty to defend

10

against any action that would diminish the funds to be distributed to the decedent's intended beneficiaries. [Citation.]" (*Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 292–293.) " '[W]here litigation is necessary for the preservation of the trust, it is both the right and duty of the trustee to employ counsel in the prosecution or defense thereof, and the trustee is entitled to reimbursement for his [or her] expenditures out of the trust fund.' [Citation.]" (*Whittlesey v. Aiello* (2002) 104 Cal.App.4th 1221, 1226–1227 (*Whittlesey*).) "The foregoing rules, of course, presuppose that the litigation was for the benefit of the trust estate. [Citation.] For example, the defense of a lawsuit that has the potential for depleting trust assets would be for the benefit of the trust, justifying the employment of counsel." (*Id.* at p. 1227.)

A trustee also has the duty to administer the trust instrument according to division 9 of the Probate Code "except to the extent the trust instrument provides otherwise." (§ 16000.) Among the duties set forth in division 9 is the "duty to administer the trust solely in the interest of the beneficiaries." (§ 16002, subd. (a).) Division 9 of the Probate Code further provides that "[i]f a trust has two or more beneficiaries, the trustee has a duty to deal impartially with them and shall act impartially in investing and managing the trust property, taking into account any differing interests of the beneficiaries." (§ 16003.) "Hence, when a dispute arises as to who is the rightful beneficiary under a trust, involving no attack upon the validity or assets of the trust itself, the trustee ordinarily must remain impartial, and may not use trust assets to defend the claim of one party against the other." (*Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 537 (*Doolittle*).)

For example, in *Whittlesey*, *supra*, 104 Cal.App.4th 1221, the appellate court determined that a trustee's attorney's fees and costs were not payable out of the trust. The appellate court explained that the amounts were incurred in litigation over the validity of a trust amendment, which "was a dispute between competing trust beneficiaries and not a challenge to the trust itself." (*Id.* at p. 1224.) The appellate court

11

further explained that "[w]hile it would not have been proper for the trustee to have allowed a default in the litigation, there was no basis for the trustee to have taken other than a neutral position in the contest. . . . [T]he parties primarily interested in the outcome of the litigation were [the beneficiary under the original trust instrument] on the one hand and [the beneficiaries under the amendment] on the other. To the extent [the trustee's attorney] defended the amendment, he was representing the interests of one side of the dispute over the other, not representing the interests of the trust or the trustee." (*Id.* at pp. 1230–1231.)

Similarly, in *Terry v. Conlan* (2005) 131 Cal.App.4th 1445 (*Terry*), this court concluded that the trustee had to bear her own litigation costs, rather than be reimbursed from the trust. (*Id.* at p. 1464.) This court explained that the trustee "has not participated in this litigation as a neutral trustee to defend the trust and protect its assets; rather, she has consistently pursued her own interests and those of her siblings, to the detriment of [a competing heir]." (*Ibid.*) This court further stated, "The dispute was, and continues to be, over who will enjoy the benefits and who will control the trust." (*Id.* at p. 1462.)

Likewise, in *Zahnleuter v. Mueller* (2023) 88 Cal.App.5th 1294 (*Zahnleuter*), the appellate court determined that the trustee had to "bear his own litigation costs, rather than be reimbursed from the trust estate" because he "did not participate in the litigation as a neutral trustee to defend the trust and protect its assets. Instead, he pursued the interests of others, including his two daughters, to the detriment of [another beneficiary]." (*Id.* at p. 1307.)

## 2. Trustee's Duty to Defend Based on Directive in Trust Instrument

As we have stated above, a trustee has the duty to administer the trust instrument according to division 9 of the Probate Code, including by remaining impartial in a dispute regarding the rightful beneficiary, "*except to the extent the trust instrument provides otherwise.*" (§ 16000, italics added; see *Doolittle, supra*, 241 Cal.App.4th at p. 537.) Consequently, "a trustee may defend against a contest by a beneficiary, even if the

12

beneficiary's contest will have no other effect on the trust except for modifying the dispositive provisions for the trust estate, *when the authority granted by the trust document directs the trustee to defend against any contest brought by a beneficiary*. [Citations.]" (*Zahnleuter*, *supra*, 88 Cal.App.5th at pp. 1304–1305, italics added.)

*Doolittle* is instructive on this point. In *Doolittle*, a daughter challenged the validity of amendments to her mother's trust, where the amendments changed the disposition of the trust estate. (*Doolittle*, *supra*, 241 Cal.App.4th at pp. 532, 535.) The last amendment to the trust contained the following directive to the trustee: "The Trustee is hereby directed to defend, at the expense of any trust estate governed by this Agreement, any contest or other attack of any nature on this Agreement, on any of its provisions and any amendments hereto, and on Trustor's Will, an attack of any nature on Trustor's estate planning and the inter vivos disposition, or disposition at death, of her assets and estate." (*Id.* at p. 534.) The trustee, a bank, petitioned for instructions, seeking an order confirming the trustee's authority to use funds in the trust estate to retain counsel to defend against the daughter's action. (*Id.* at pp. 535–536.) The probate court granted the trustee's petition. (*Id.* at p. 536.)

In affirming the order, the appellate court explained that "[t]he provision in the . . . trust directing the trustee to defend against contests at the expense of the trust changes what the trustee's obligations would be in the absence of such a provision." (*Doolittle*, *supra*, 241 Cal.App.4th at p. 537.) The appellate court distinguished the opinions in *Whittlesey* and *Terry* on the ground that "[t]he trust agreements in *Whittlesey* and *Terry* did not contain an explicit directive to the trustee to defend claims challenging the validity of the amendment at the trust's expense, as does the trust instrument in the present case." (*Doolittle*, *supra*, at p. 538, fn. omitted.) The appellate court in *Doolittle* ultimately concluded that the probate court properly authorized the trustee to use trust assets to defend against the daughter's challenges to the trust amendments. (*Id.* at p. 532.)

13

### 3. Enforceability of a Directive to Defend that Is Contained in a Contested Amendment

A trust instrument containing a directive for the trustee to defend against contests "remains in effect until the trust, or as in this case the trust amendment, is judicially invalidated or otherwise terminated." (*Doolittle*, *supra*, 241 Cal.App.4th at p. 544.) If the rule was otherwise, that is, if "the directive to the trustee to defend the challenge . . . could be enforced only after it was determined that the underlying challenge lacked merit and was brought without probable cause, [then] the trustee would have no means of knowing whether the instruction should be observed prior to resolution of the merits of the underlying controversy. The trustee would be unable to comply with the directive until after the litigation had been concluded, rendering the directive meaningless." (*Id.* at pp. 543–544.)

Nevertheless, in *Doolittle*, *supra*, 241 Cal.App.4th 529, the appellate court explained that a party contesting a trust containing a defense directive is not "without recourse in appropriate circumstances." (*Id.* at p. 546.) In *Doolittle*, the trustee bank petitioned for instructions, citing trust provisions that imposed a duty to defend at the trust's expense, and requesting an order confirming the trustee's authority to defend against a daughter's challenges to an amendment to her mother's trust. (*Id.* at pp. 532, 535–536.) The daughter filed her own petition for instructions, contending that the trustee was prohibited from defending against the trust contests until those contests were resolved on the merits. (*Id.* at p. 536.)

The appellate court found that "[t]here [was] some logic to [the daughter's] contention that since the validity of the amendment conferring the trustee with the authority to defend her claims is the very subject of the litigation and has not yet been adjudicated, enforcement of the defense directive should await the outcome of the litigation." (*Doolittle*, *supra*, 241 Cal.App.4th at p. 545.) The appellate court explained that "[u]pon a sufficient showing, the party contesting the validity of a trust instrument

14

may seek a preliminary injunction, which is within the probate court's discretion to grant. [Citations.] Such an application would allow the court to weigh the equities and enjoin the use of trust assets to defend a challenge upon a proper showing of the likelihood of success. [Citation.] The same equitable considerations may properly be considered by the probate court in acting on petitions for instructions under section 17200 . . . . [Citations.]" (*Id.* at p. 546.)

However, in the case before it, the appellate court found that the daughter "made no explicit request for preliminary relief in the trial court. Nor, in her papers opposing [the] trustee's petition [for instructions] . . . did she provide any evidence based on which the court might have invoked such equitable considerations in acting on the applications before it. [The daughter] made no attempt to establish that she is likely to prevail in her challenges to the validity of the trust amendment or that the balance of equities favors denying trustee the authority to defend her actions at the expense of the trust. On the other hand, trustee presented substantial evidence tending to negate the allegations of incapacity and undue influence, and there is no showing that the beneficiaries under the 2005 trust amendment have the resources to defend her actions if the trustee may not do so at trust expense. Under these circumstances, the probate court did not abuse its discretion in authorizing trustee to defend at trust expense the validity of the trust amendment." (*Doolittle*, *supra*, 241 Cal.App.4th at p. 546.)

### 4. Interpretation of a Trust Instrument and the Standard of Review

" 'In construing trust instruments, . . . the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker.' [Citation.] '[I]f the court can ascertain the testator's intent from the words actually used in the instrument, the inquiry ends. [Citation.]' " (*Zahnleuter*, *supra*, 88 Cal.App.5th at p. 1305.) Where, as here, "[t]here is no conflict or question of credibility in the relevant extrinsic evidence," the "interpretation of the trust is a question of law for our independent review. [Citation.]" (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 604.)

15

## 5. Analysis

We determine that the probate court erred in ordering trustee Koski to remain neutral with respect to Campbell's litigation and to not file a responsive pleading to his petition.

First, the Second Amendment to the trust contains an express directive to the successor trustee to defend against any attack on the trust, which would include Campbell's petition attacking the validity of the Second Amendment. Specifically, the Second Amendment states, "The successor trustee is directed to and authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions." This language is similar to the language in *Doolittle*, which the appellate court characterized as "an explicit directive to the trustee to defend claims challenging the validity of the amendment at the trust's expense." (*Doolittle*, *supra*, 241 Cal.App.4th at p. 538; *id.* at p. 534 ["Trustee is hereby directed to defend, at the expense of any trust estate governed by this Agreement, any contest or other attack of any nature on this Agreement, on any of its provisions and any amendments hereto, and on Trustor's Will, an attack of any nature on Trustor's estate planning and the inter vivos disposition, or disposition at death, of her assets and estate"]; see *id.* at pp. 539, 543, 544, 545, 549 [repeatedly characterizing the provision as a "defense directive"].)

Second, "[t]he primary duty of a court in construing a trust is to give effect to the settlor's intentions. [Citation.]" (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 826 (*Barefoot*).) Here, interpreting the language as a directive to defend, rather than merely authorizing the trustee to defend, furthers Fiazi's clear intent that the Second Amendment be defended against attack when he knew that the new distribution set forth in the Second Amendment had generated "question" by family and friends and "efforts to interfere." Specifically, in the Second Amendment, Fiazi stated that he was "aware that certain family members and friends question[ed] his actions managing his assets and amending his trust with respect to the persons he ha[d] designated as beneficiaries," that some

people had engaged in "efforts to interfere," and that he "intend[ed] to exercise his right to dispose of his assets as he so cho[se] without interference from anyone who disagrees." To this end, Fiazi in the Second Amendment expressly "instruct[ed] the successor trustee of the trust to carry out his wishes as stated herein and to take all necessary steps to prevent the circumvention of his wishes."

Third, the fact that the defense directive was contained in the Second Amendment, which Campbell has challenged the validity of, is not a basis by itself for Koski, as trustee, to avoid abiding by the defense directive. A directive in a trust amendment for the trustee to defend against contests "remains in effect until . . . the trust amendment[] is judicially invalidated or otherwise terminated." (*Doolittle*, *supra*, 241 Cal.App.4th at p. 544.) Thus the defense directive contained in the Second Amendment remains in effect unless and until the probate court determines that the Second Amendment is invalid.

Fourth, Koski's and Campbell's contentions on appeal do not persuade us that a different result is warranted.

Koski contends that she properly sought relief pursuant to *Doolittle* by filing a petition for instructions, and that the probate court did not abuse its discretion in granting the petition and ordering her to remain neutral as to Campbell's trust contest. However, Koski in her petition for instructions did not request the type of relief, or make the requisite showing, described in *Doolittle*. Specifically, Koski "made no explicit request for preliminary relief" either in her petition for instructions or in her reply in support of the petition. (*Doolittle*, *supra*, 241 Cal.App.4th at p. 546.) She also did not "provide any evidence . . on which the court might have invoked such equitable considerations." (*Ibid.*) There was no evidence before the court establishing that a "challenge[] to the validity of the [Second Amendment]" was "likely" to succeed "or that the balance of equities favor[ed] denying [Koski as] trustee the authority to defend [against Campbell's petition] at the expense of the trust." (*Ibid.*) Further, although Figueroa is currently

17

represented by counsel, there was "no showing that [she or] the [other] beneficiaries under the [Second Amendment] have the resources to [continue to] defend [against Campbell's petition] if the trustee may not do so at trust expense." (*Ibid.*) In view of the record, we disagree with Koski's contention that the probate court properly exercised its discretion to grant preliminary relief, where no request for preliminary relief was made, let alone a sufficient showing to justify such relief. We do not decide whether Koski (or Campbell) might be able to make a sufficient showing upon a future petition seeking preliminary relief.

We also reject Koski's contention that she must remain neutral in relation to Campbell's petition to avoid "an accusation of breaching her fiduciary obligations to the Trust beneficiaries." A trustee of a trust having two or more beneficiaries generally has a duty to "deal impartially" with beneficiaries "except to the extent the trust instrument provides otherwise." (§§ 16003, 16000.) Consequently, "a trustee may defend against a contest by a beneficiary, even if the beneficiary's contest will have no other effect on the trust except for modifying the dispositive provisions for the trust estate, when [as here] the authority granted by the trust document directs the trustee to defend against any contest brought by a beneficiary. [Citations.]" (*Zahnleuter, supra*, 88 Cal.App.5th at pp. 1304–1305.) In other words, Koski's obligation to comply with the express directive to defend that is contained in the Second Amendment takes precedence in this particular circumstance over her general duty to deal impartially with the beneficiaries.

We are not persuaded by Koski's reliance on *Barefoot v. Jennings* (2020) 8 Cal.5th 822 (*Barefoot*). In *Barefoot*, the California Supreme Court held that an individual, who is disinherited in the last amendment to a trust before the settlor dies, has standing to challenge the validity of the disinheriting amendments on grounds such as incompetence, undue influence, and fraud. (*Id.* at pp. 824–825.) The court reached this conclusion based on Probate Code provisions (1) authorizing a beneficiary to petition the probate court concerning the existence of a trust or the validity of a trust provision

18

(§ 17200, subds. (a) & (b)(3)) and (2) defining beneficiary to include a person who has a present or future interest (§ 24, subd. (c)). (*Barefoot*, *supra*, at p. 827.) The court reasoned that "[a]ssuming plaintiff's allegations are true, she has a present or future interest, making her a beneficiary permitted to petition the probate court under section 17200." (*Ibid.*) The court concluded that "[t]o hold other than we do today would be to insulate those persons who improperly manipulate a trust settlor to benefit themselves against a probate petition. Today's narrow holding in fact provides an orderly and expeditious mechanism for limited challenges like plaintiff's to be litigated early in the probate process, in probate court, and to ensure that the settlor's intent is honored. [Citation.]" (*Id.* at p. 829.) The court also noted that "it would undermine the public interest if a court were to rule that those valid beneficiaries had no standing to contest the fraudulently procured amendment." (*Id.* at p. 829, fn. 3.)

*Barefoot* supports Campbell's standing in the instant case as a disinherited beneficiary to challenge the Second Amendment on grounds such as incompetence, undue influence, or fraud. (*Barefoot*, *supra*, 8 Cal.5th at pp. 824–825.) *Barefoot* does not, however, support Koski's broad contention that the defense directive in the Second Amendment should automatically be invalidated and unenforceable based on a public policy concern about beneficiaries "who fraudulently induced a settlor to amend a trust" and who "also induce[d] [the] settlor to include a no contest provision directing and authorizing the trustee to defend any contest to insulate the beneficiar[ies] from having to expend personal funds to defend their actions." Indeed Koski as trustee "takes no position on the veracity of the allegations" in Campbell's petition regarding Figueroa allegedly unduly influencing Fiazi in executing the Second Amendment. Further, as set forth in *Doolittle*, to the extent there is a "sufficient showing" that establishes Campbell "is likely to prevail in [his] challenges to the validity of the trust amendment or that the balance of equities favors denying [the] trustee the authority to defend [against Campbell's petition] at the expense of the trust," a request for preliminary relief

19

regarding the defense directive may be presented to the probate court in the first instance. (*Doolittle*, *supra*, 241 Cal.App.4th at p. 546.)

We also disagree with Koski's contention that *Zahnleuter*, *supra*, 88 Cal.App.5th 1294 is similar to the instant case. In *Zahnleuter*, "the trust document did not direct the trustee to defend against a contest to any amendment to the trust. Rather, . . . the language of the trust document explicitly *did not* authorize the trustee to do so." (*Id.* at p. 1308.) In contrast, the Second Amendment in this case expressly directs the trustee to defend against any attack on the trust at the expense of the trust estate.

We understand Koski and Campbell to argue that a trustee retains the discretion to decide whether to defend a trust even when the trust instrument contains a directive to defend. In support of this argument, Koski and Campbell quote from *Zahnleuter*, which states that "a trustee may defend against a contest by a beneficiary, even if the beneficiary's contest will have no other effect on the trust except for modifying the dispositive provisions for the trust estate, when the authority granted by the trust document directs the trustee to defend against any contest brought by a beneficiary. [Citations.]" (*Zahnleuter*, *supra*, 88 Cal.App.5th at pp. 1304–1305.) Koski and Campbell contend that *Zahnleuter*'s use of the phrase "may defend" means that a trustee is not required to defend even if the trust contains a directive to do so. (*Id.* at p. 1304.)

We are not persuaded by Koski's and Campbell's reliance on *Zahnleuter*. As we have explained, *Zahnleuter* involved a trust document that "explicitly *did not* authorize the trustee" to defend. (*Zahnleuter*, *supra*, 88 Cal.App.5th at p. 1308.) Thus, the appellate court in *Zahnleuter* was not presented with the question of whether a trustee under a directive to defend retains the discretion to not defend. (See *People v. Knoller* (2007) 41 Cal.4th 139, 155 [" 'An appellate decision is not authority for everything said in the court's opinion but only "for the points actually involved and actually decided" ' "]; accord, *Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 641 [" ' " 'cases are not authority for propositions not considered' " ' "].)

20

Further, *Zahnleuter* cited *Doolittle*, which observed that under section 16202, "[t]he grant of a power to a trustee, whether by the trust instrument, by statute, or by the court, does not in itself require or permit the exercise of the power. The exercise of a power by a trustee is subject to the trustee's fiduciary duties." (See *Doolittle*, *supra*, 241 Cal.App.4th at p. 544.) In this case, as we have explained, Koski's general duty to treat beneficiaries impartially does not provide a legal basis for refusing to comply with the directive to defend. (§ 16000 [trustee has a duty to administer a trust according to the Probate Code "except to the extent the trust instrument provides otherwise"]; *Doolittle*, *supra*, 241 Cal.App.4th at p. 537 ["The provision in the 2005 trust directing the trustee to defend against contests at the expense of the trust changes what the trustee's obligations would be in the absence of such a provision"].) Further, no party requested preliminary relief regarding the directive to defend, nor made a sufficient showing to justify such relief. (See *Doolittle*, *supra*, at p. 546.)

We are also not persuaded that a different outcome is warranted based on Koski's argument that if she is required to defend against Campbell's petition at the expense of the trust estate, Campbell "would effectively [be] force[d] . . . to pay both his own attorney's fees and Ms. Figueroa's attorney's fees if he prevailed in this action." A similar argument was rejected in *Doolittle*: "[The daughter] argues that . . . her share in the estate will be reduced even if she prevails in the litigation. She explains that if she is successful in striking the later amendments, she and her sister will be reinstated as the sole residual beneficiaries and the cost of the defense will have reduced the trust residue to which they are entitled. The same is true, however, for the beneficiaries named in the disputed trust amendment. If the trustee prevails against [the daughter's] contest, they will remain the residual beneficiaries and their share of the residue will also have been reduced by the cost of the defense. In short, assuming probable cause for [the daughter's] claims, whoever prevails ultimately bears the costs of the defense. While [the daughter] is required to bear her costs 'out of pocket,' that would be the case regardless of whether

21

the trust assumes the cost of defense. The fact that the adverse parties in interest are not similarly burdened is not a penalty imposed on [the daughter] but an unavoidable consequence of the situation . . . . If the rule were otherwise and the beneficiaries named in the amendment were unable to assume the costs of defense, there would be no means to defend implementation of the trustor's intentions in amending the trust even if the challenger's attack on the amendment were entirely unfounded." (*Doolittle*, *supra*, 241 Cal.App.4th at p. 543.)

We are not persuaded by Campbell's contention that Koski's status as a beneficiary under the trust necessitates that she, as the trustee, remain neutral in relation to his petition challenging the validity of the Second Amendment. Campbell argues that Koski's "interest was cut from 30% to 22% under the contested Second Amendment." From this argument, we understand Campbell to suggest that Koski has a personal interest in having the Second Amendment declared invalid in order to receive "a larger share" of the trust estate under the First Amendment.

Although the percentages for Koski decreased from the First Amendment to the Second Amendment, it is not clear that Koski will actually receive a smaller amount under the Second Amendment. The First Amendment provided for specific monetary gifts totaling $300,000 to be distributed, with Koski to receive 30 percent of the *remainder* of the trust estate. Under the Second Amendment, the monetary gifts were *omitted* and Koski is to receive 22 percent of the trust estate. As Koski explained below, "it is possible that the 30% remainder interest in the First Amendment could actually turn out to be equal to or less than her 22% interest in the entire trust contained in the Second Amendment." Further, even assuming Koski would receive a larger amount under the First Amendment, we observe that Koski specifically stated in her reply brief in support of her petition for instructions that she "is aware of her fiduciary obligations and places those obligations in front of any personal financial responsibilities that she may have."

22

Campbell also argues that the Restatement gives the trustee the discretion to defend, quoting from Article Ten, and that the Second Amendment's directive to defend does not diminish this discretion. We are not persuaded by this argument. Article Ten of the Restatement states: "The trustee may, in the trustee's discretion, initiate or defend, at the expense of the trust, any litigation that the trustees [sic] considers advisable relating to the trust or any property of the trust estate." Article Eight as set forth in the Second Amendment states, "The successor trustee is directed to and authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this trust or any of its provisions." Article Ten's grant of discretion to defend "any litigation . . . relating to" the trust is a more general power than Article Eight's directive to defend "any contest or other attack" on the trust. When a trust provides a "general grant of discretion" and a "clause specifically *directs* the trustee to act," the "particular expressions qualify those which are general." (*Estate of Greenleaf* (1951) 101 Cal.App.2d 658, 665.) As a consequence, Article Eight's specific instructions to the trustee, regarding defending the trust against attack, control over Article Ten's more general grant of discretion to defend. Moreover, Article Ten's broad grant of discretionary power is, by its own terms, limited by the trust's other, more specific provisions. In this regard, Article Ten states at the outset that the powers listed in Article 10 are "subject to any limitations stated elsewhere in this trust," which necessarily includes the directive to defend in Article Eight.

Lastly, we are unpersuaded by Koski's and Campbell's contention that Figueroa suffered no prejudice by the order directing Koski to remain neutral in relation to Campbell's petition. In the absence of Koski defending against Campbell's petition, Figueroa has been and will continue to be required to defend against the petition herself. Koski does not provide authority suggesting that the fact that Figueroa, "if successful, may presumably seek reimbursement from the Trust" precludes a determination of prejudice in this circumstance. Koski also does not point to anything in the record demonstrating that a defense by the trustee would be completely unnecessary due to the

23

defense already being provided by Figueroa. Undoubtedly, as Figueroa observes, "a more complete and more effective defense can be mounted with the support of the Trustee and Trust resources."

In sum, we conclude that Koski's petition for instructions to remain neutral regarding Campbell's petition should have been denied.

## IV. DISPOSITION

The order granting trustee Manijeh Sheila Koski's petition for instructions to remain neutral and file no responsive pleading to Schuyler Campbell's petition or amended petition is reversed. The probate court is directed to enter a new order denying Koski's petition for instructions.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
GREENWOOD, P. J.

_____
WILSON, J.

***Koski v. Campbell***
**H051453**